**James M. EVANS, Juanita J. Evans and the Northwest Indiana Open Housing Center, Inc., Plaintiffs,**

v.

**FIRST FEDERAL SAVINGS BANK OF INDIANA, Randall H. Walker and Frank E. Pavlic, Defendants.**

**Civ. Nos. H 86–711, H 86–0712, H 86–0716, H 86–0719 and H 86–0776.**

United States District Court, N.D. Indiana, Hammond Division.

Sept. 18, 1987.

---

Lawrence G. Albrecht, Valparaiso University School of Law, and Jeffrey A. James, Hoeppner, Wagner & Evans, Valparaiso, Ind., for plaintiffs.

Gregory J. Jordan, Merrillville, Ind., and Stephen E. Smith, Chicago, Ill., for defendants.

### ORDER

MOODY, District Judge.

This matter comes before the court on a motion to dismiss filed by defendants First Federal Savings Bank of Indiana ("First Federal"), Randall H. Walker and Frank E. Pavlic on January 7, 1987. The court is also in receipt of the above defendants' additional motion to dismiss filed January 9, 1987. The plaintiffs filed a response in opposition on February 5, 1987 to which the defendants replied on March 9, 1987. For the reasons discussed below, the motion to dismiss is GRANTED in part and DENIED in part.

### I.

The plaintiffs in the above-entitled action, James M. Evans, Juanita J. Evans and The Northwest Indiana Open Housing Center, Inc., ("NIOHC"), filed their complaint

on October 6, 1986. Subsequently, three similar lawsuits (H86–712, H86–716, H86–719) were filed against First Federal and several of its employees and officers. Because these four lawsuits all sought relief for alleged violations of Sections 1981 and 1982 of the Civil Rights Act of 1866, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604, 3605, the court, finding that they contained common questions of law and fact, consolidated the four cases for all purposes pursuant to Fed.R.Civ.P. 42(a). Additionally, this court consolidated another suit (H86–776) involving the NIOHC and the same defendants which sought similar relief.[1] The combined complaints allege that the defendants pursued a "mortgage redlining" practice in relation to their requests for loans. By their present motion, defendants seek to dismiss certain allegations in plaintiffs' complaints on the following grounds: (1) that the plaintiffs have failed to state a claim upon which relief can be granted under section 1982; (2) that the organizational plaintiff NIOHC lacks standing to seek relief under the ECOA; and (3) that the plaintiffs, Willie Hanley, Adelle Hanley and NIOHC, fail to state a claim upon which relief can be granted under the FHA.

In setting out the facts of this case, the court is mindful of the present procedural posture, this matter is before the court on a motion to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and the lack of standing, Fed.R.Civ.P. 12(b)(1). Dismissal of a claim for relief is proper under Fed.R.Civ.P. 12(b)(6) only where it appears beyond a doubt that the plaintiff can prove no set of facts which would support that claim. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Ed Miniat, Inc., v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 735 (7th Cir. 1986); *Papapetropoulous v. Milwaukee Transport Services,* 795 F.2d 591, 594 (7th Cir.1986); *Action Repari, Inc. v. American Broadcasting Co.,* 776 F.2d 143, 146 (7th Cir.1985). For purposes of a motion to dismiss, the pleadings are to be construed liberally. *Strauss v. City of Chicago,* 760 F.2d 765, 776 (7th Cir.1985). Furthermore, the court must accept as true all material allegations of the complaint, *Wilson v. Harris Trust & Sav. Bank,* 777 F.2d 1246, 1247 (7th Cir.1985), and construe the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Haroco, Inc. v. American National Bank and Trust Co.,* 747 F.2d 384, 385 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Ricci v. Chicago Mercantile Exchange,* 447 F.2d 713, 715 (7th Cir.1971). Likewise, when ruling on a 12(b)(1) dismissal, the trial court "must accept as true all allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. at 501, 95 S.Ct. at 2206. Keeping this deferential standard in mind, the court now turns to the facts alleged by plaintiffs in their complaints.

The plaintiffs allege that First Federal discriminated in its lending practices by engaging in "mortgage redlining."[2] Plaintiffs claim they were denied home equity or mortgage loans by First Federal because they are black and reside in predominantly black neighborhoods in Gary, Indiana. The plaintiff NIOHC is a not-for-profit corporation organized under the laws of Indiana and supported by private contributions, foundation grants and contracts with certain cities. The purpose of the organization is to further the goals of the FHA and to promote equal opportunity in housing in northwest Indiana. The center's activities include referral services, housing and financial counseling to minority homeseekers, investigation of complaints of housing discrimination and legal represen-

---

1. The court wishes to make clear, *Sandwiches, Inc. v. Wendy's International, Inc.,* 822 F.2d 707, 710 (7th Cir.1987), that these five cases have been consolidated for *all* purposes.

2. Mortgage redlining is defined as mortgage credit discrimination based on the characteristics of the neighborhood surrounding the would-be borrower's dwelling. *Thomas v. First Federal Savings Bank of Indiana,* 653 F.Supp. 1330, 1337 (N.D.Ind.1987).

tation in actions involving discrimination. The NIOHC, which never applied for a loan itself, is suing on its own behalf claiming that First Federal's alleged redlining significantly impaired, and continues to impair, its ability to provide services to the city of Gary, Indiana and its residents.

The remaining plaintiffs, all of whom personally applied for loans, claim they were directly affected by First Federal's alleged discrimination. However, the plaintiffs' reasons for applying for their respective loans varied. The Evanses (H86–711) applied for a mortgage loan to refinance their existing mortgage in order to make home improvements. The Browns (H86–712) wished to use a previous mortgage commitment to purchase real estate. The Hanleys (H86–716) applied for a home equity loan for the dual purpose of purchasing an automobile and financing a college education. Karen Freeman (H86–719) requested a loan in order to make home improvements. Finally, Jean B. Thurman (H86–776) applied for a home equity loan for the purposes of purchasing an individual retirement account and to make home improvements.

## II.

### Section 1982

Defendants first argue that the plaintiffs in the Evans (H86–711), Freeman (H86–719) and Hanley (H86–716) actions have failed to allege facts necessary to establish a cause of action under section 1982. Plaintiffs contend that First Federal and its officers violated section 1982 by refusing, on the basis of race, to extend mortgage financing on their already-acquired property. First Federal maintains that the procurement of financing is not a protected property interest within the scope of section 1982.

■ The Civil Rights Act of 1877, 42 U.S.C. § 1982, addresses the property rights of citizens and provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell,

hold and convey real and personal property.

To allege a violation of section 1982 the complaining party must demonstrate that the defendant's conduct impaired his or her property interest. *City of Memphis v. Greene*, 451 U.S. 100, 120–24, 101 S.Ct. 1584, 1596–98, 67 L.Ed.2d 769 (1981); *Southbend Neighborhood Improvement Association v. County of St. Clair*, 743 F.2d 1207, 1211 (1984). The question of whether the procurement of financing (in particular, a second mortgage) is a protected property interest for purposes of section 1982 appears to be one of first impression; the parties have presented no published case law on this issue and the court has been unable to discover any on its own. Nevertheless, the court is guided by several Supreme Court decisions construing the scope of section 1982.

■ In *Memphis*, the Court held that section 1982 was designed to "protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and *use* property on an equal basis with white citizens." 451 U.S. at 120, 101 S.Ct. at 1596 (emphasis added). The *Memphis* Court then reviewed its cases discussing the types of interests protected and the activities proscribed by section 1982; the court stated:

Thus, in *Hurd v. Hodge*, 334 U.S. 24, 92 L.Ed. 1187, 68 S.Ct. 847, the Court refused to permit enforcement of private covenants imposing racial restrictions on the sale of property even though the legal rights of blacks to purchase or to sell other property were unimpaired. In *Jones, supra,* we held that § 1982 "must encompass every racially motivated refusal to sell or rent." 392 U.S. at 421–422, 20 L.Ed.2d 1189, 88 S.Ct. 2186 [2194], 47 Ohio Ops.2d 43. In *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 24 L.Ed.2d 386, 90 S.Ct. 400, we interpreted the term "lease" in § 1982 to include an assignable membership share in recreational facilities. In *Tillman v. Wheaton-Haven Recreation Assn., Inc.,* 410 U.S. 431, 35 L.Ed.2d 403, 93 S.Ct. 1090, we extended that holding to cover a

preference to purchase a nontransferable swim club membership.

*Id.* at 120–22, 101 S.Ct. at 1596–97 (footnotes omitted). The Court concluded as follows:

> Although these cases *broadly defined the property rights protected by § 1982,* our cases, like the statutory language itself, all concerned the right of black persons to *hold* and acquire property on an equal basis with white persons and the right of blacks not to have property interests impaired because of their race.

*Id.* at 122, 101 S.Ct. at 1597–1598 (emphasis added) (footnote omitted). As this discussion in *Memphis* reveals, the scope of interests protected by section 1982 has been given a broad interpretation by the Court.

In challenging plaintiffs' section–1982–financing claim, First Federal relies principally upon *dictum* in a 1968 Supreme Court decision. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968). In *Jones,* the Court was concerned with whether section 1982 applied to private, as well as state, action in the sale or rental of property and, if so, whether such scope was constitutional. When addressing these issues, the *Jones* Court compared section 1982 to the FHA. Unlike the FHA, the Court explained, section 1982 "is not a comprehensive open housing law." *Id.* at 413, 88 S.Ct. at 2189. The Court noted the several differences between the scope of the two statutes by stating:

> [Section 1982] does not deal specifically with discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling. It does not prohibit advertising or other representations that indicate discriminatory preferences. *It does not refer explicitly to discrimination in financing arrangements* or in the provision of brokerage services. It does not empower a federal administrative agency to assist aggrieved parties. It makes no provision for intervention by the Attorney General. And, although it can be enforced by injunction, it contains no provision expressly authorizing a federal court to order the payment of damages.

*Id.* (emphasis added) (footnotes omitted).

It appears, from an initial reading of the above-quoted portion of the *Jones* opinion, that the Supreme Court adumbrated that section 1982 was not intended to cover financing arrangements. However, in a footnote to that very statement, the *Jones* Court explained that, although section 1982 does not specifically address discrimination in the provision of services or facilities, financing arrangements or brokerage services, the Court "intimates no view" upon whether such discrimination still might be covered under sections 1982 and/or 1981. *Id.* at 413 n. 10, 88 S.Ct. at 2189 n. 10. Thus, First Federal's reliance on *Jones* for its narrow interpretation of section 1982 is misplaced; the Court made expressly clear that it had no opinion on whether section 1982 covered financing arrangements. *Cf. Saunders v. General Services Corp.,* 659 F.Supp. 1042, 1062–63 (E.D.Va.1987) (same analysis but reaching opposite conclusion with respect to discriminatory advertising practices because advertising was not mentioned in footnote 10 of *Jones* ).

Given the remedial purposes of section 1982 and the liberal interpretation that courts have traditionally accorded the statute, this court is of the opinion that the present plaintiffs' complaints sufficiently allege a violation of section 1982. A policy adopted by a lending institution, like First Federal, of denying mortgage loans to black citizens who are seeking to *purchase* real estate would apparently be prohibited by section 1982; after all, the statute provides that "[a]ll citizens ... shall have the same rights ... to ... purchase ... real ... property." In the present case, the plaintiffs, who are black citizens, were not trying to purchase property; instead, they were trying to use their already-owned property in order to obtain second mortgages or equity loans. While it is true that there is no mention of a right to obtain an equity loan in section 1982, the Supreme Court has found that the statute does guarantee black citizens the right to *"use property* on an equal basis with white citizens."

*Memphis,* 451 U.S. at 120, 101 S.Ct. at 1596 (emphasis added).

The financial and tax benefits that result from the purchase of a home, including the eventual accrual of equity, make home ownership an attractive investment for those who can afford it. Using the equity in one's already-owned home as collateral for a loan is a valued and common practice in this country and, as such, is a significant interest associated with home ownership. This equity interest and the ability to exercise it free from discrimination is certainly as fused into the right to "hold" property as is the right of access to, or enjoyment of, recreational facilities associated with the property. *Cf. Tillman,* 410 U.S. at 437, 93 S.Ct. at 1094.

Therefore, the court holds that the use of one's already-owned property to obtain a loan is a protected use of that property under section 1982 which cannot be impaired on the basis of race. To hold otherwise and at the same time to suggest that black citizens "have been accorded the same rights as white citizens to purchase, *hold,* and convey real property is to reject the plain meaning of language." *Cf. Hurd v. Hodge,* 334 U.S. at 34, 68 S.Ct. at 852 (emphasis added) (holding that racially restrictive covenants were violative of section 1982 even though the legal rights of blacks to purchase or sell other property were unimpaired). Accordingly, defendants' motion to dismiss plaintiffs' section 1982 claims is DENIED.

### III.

■ The defendants argue next that plaintiff NIOHC lacks standing to seek relief under the ECOA and move for dismissal pursuant to Fed.R.Civ.P. 12(b)(1).

Article III of the U.S. Constitution restricts the power of the federal judiciary to the resolution of "cases" or "controversies." *Diamond v. Charles,* 476 U.S. 54, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986); *Bender v. Williamsport Area School District,* 475 U.S. 534, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S.

464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *City of Evanston v. Regional Transport Authority,* 825 F.2d 1121, 1123 (7th Cir.1987); *Northside Sanitary Landfill v. Thomas,* 804 F.2d 371, 380–81 (7th Cir.1986). The concept of a party's standing to bring suit "is a component of the case-or-controversy requirement and, as such, bears on the power of a court to entertain a party's claim." *Northside,* 804 F.2d at 380–81; *Valley Forge,* 454 U.S. at 471, 102 S.Ct. at 758. In order for any party to have standing to bring suit in federal court, three requirements must be met:

> (1) the party must personally have suffered an actual or threatened injury caused by the defendant's allegedly illegal conduct, (2) the injury must be fairly traceable to the defendant's challenged conduct, and (3) the injury must be one that is likely to be redressed through a favorable decision. *Valley Forge,* 454 U.S. at 472 [102 S.Ct. at 758]. "Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III." *Id.* at 487–88 n. 24 [102 S.Ct. at 766–67 n. 24].

*City of Evanston,* at 1123 (citing *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758).

In addition to these constitutional requirements,

> the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing. Thus, [the Supreme] Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. [490] 499 [95 S.Ct. 2197, 2205, 45 L.Ed.2d 343] (1975). In addition, even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and most appropriately addressed in the representa-

tive branches. *Id.,* at 499–500 [95 S.Ct. at 2206]. *Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."* Association of Data Processing Service Orgs. v. Camp, 397 U.S. 150, 153 [90 S.Ct. 827, 830, 25 L.Ed.2d 184] (1970). *Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. at 760 (footnotes omitted) (emphasis added).

In the present case, defendants argue that the organization NIOHC lacks standing under the ECOA because it did not apply for credit, thus, it is not an applicant within the meaning of the statute. Defendants' argument, in essence, is that NIOHC does not fall within the "zone of interests" Congress meant to protect when enacting the ECOA.

As noted above, the zone-of-interests limitation is one of several judicially imposed, prudential restrictions on the exercise of federal judicial power. *Id.; see also Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 222, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706 (1974); *United States v. Raines,* 362 U.S. 17, 22–23, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960). "The limitation derives from the conviction that it is imprudent in some circumstances for the courts to exercise power, even though a plaintiff established an actual case or controversy in his complaint." *South East Lake View v. Department of Housing,* 685 F.2d 1027, 1034 (7th Cir.1982). The zone-of-interests requirement for standing has been consistently enforced by the Seventh Circuit, *id., see also Alschuler v. Department of Housing and Urban Development,* 686 F.2d 472, 477 (7th Cir.1982), *People Gas, Light & Coke Co. v. U.S. Postal Service,* 658 F.2d 1182, 1195 (7th Cir.1981), *Marshall & Ilsley Corp. v. Heimann,* 652 F.2d 685, 693 (7th Cir.1981), *Bradford School Bus Transit, Inc. v. Chicago Transit Authority,* 537 F.2d 943, 946 (7th Cir.1976), *Apter v. Richardson,* 510 F.2d 351, 353 (7th Cir.1975); furthermore, application of the zone-of-interests requirement is mandatory for this court—it "is not discretionary with the district courts." *South East Lake,* 685 F.2d at 1034.

In ascertaining what interests are protected by a statute, the court must "examine the language of the relevant statutory provision, the pertinent regulations, and the legislative history to discern the parameters of the relevant zone of interest and to determine whether the interest of [plaintiff] arguably falls within the zone." *People Gas,* 658 F.2d at 1195.

Originally, the ECOA, enacted by the 93rd Conress in 1974 as Title V of Public Law 93–495, dealt only with discrimination on the grounds of sex or marital status and sought to eradicate credit discrimination against women, ecpecially married women whcm creditors traditionally refused to consider for individual credit. *See,* S.Rep. 94–589, 94th Cong., 2nd Sess. 2, *reprinted in* 1976, U.S.Code Cong. & Ad.News 403, 404 [hereinafter *"S.Rep."*]; *Anderson v. United Finance Co.,* 666 F.2d 1274, 1276–77 (9th Cir.1982). To further the ECOA's "major purpose of extending the federal ban on discriminatory credit practices," Congress, in 1976, amended the statute to prohibit credit discrimination on the bases of age, race, color, religion, national origin, receipt of public assistance benefits, and exercise of rights under the Consumer Credit Protection Act (15 U.S.C. §§ 1601–1667e (1982)). *S.Rep.* at 404.

Section 1691(a) of the ECOA reads as follows:

Scope of prohibition

Activities constituting discrimination

(a) It shall be unlawful for any creditor to discriminate against any *applicant,* with respect to any aspect of a credit transaction—

(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the *applicant* has the capacity to contract);

(2) because all or part of the *applicant's* income derives from any public assistance program; or

(3) because the *applicant* has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a) (emphasis added). Section 1691a, entitled "Definitions; rules of construction," defines the term "applicant" as meaning:

> any person who *applies* to a creditor directly for an extension, renewal, or continuation of credit, or *applies* to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit.

15 U.S.C. § 1691a (emphasis added). These statutory provisions clearly indicate that Congress meant to protect those individuals who actually apply for credit.

Moreover, the Board of Governors of the Federal Reserve Board, which is charged with promulgating regulations to carry out the purposes of the ECOA, 15 U.S.C. § 1691b, has further defined "applicant" in the Code of Federal Regulations as "any person who requests or has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e)(1987). Based on the unambiguous language found in the statute, its corresponding regulations, and its legislative history, the court holds that plaintiff NIOHC, which never applied for credit, is not an applicant for purposes of the ECOA and, thus, does not fall within the zone of protected interests contemplated by Congress when enacting the ECOA.[3] Accordingly, defendants' mo-

---

**3.** In response, plaintiffs put forth a rather attenuated argument in favor of NIOHC's standing under the ECOA. In essence, plaintiffs' argument is as follows: (1) the standing requirements of the ECOA are identical to those under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631, and the Equal Employment Opportunities Act, 42 U.S.C. §§ 2000e–2000e–17; (2) because the Supreme Court has found that a plaintiff in either an FHA or EEOC case need only meet the Article III standing requirements, *see Hackett v. McGuire Brothers, Inc.,* 445 F.2d 442, 446 (3d Cir.1971) (EEOA); *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 209, 93 S.Ct. 364, 366, 34 L.Ed.2d 415 (1972) (citing *Hackett* with approval and dealing with standing under the FHA); then (3), NIOHC does not have to satisfy any prudential standing requirements like the zone-of-interests limitation when bringing an ECOA claim.

Without addressing the many problems with plaintiffs' argument, the court merely observes that they have failed to demonstrate that the standing requirements of the ECOA are identical to those under the FHA and EEOA. Plaintiffs are unable to point to any decision holding that the standing requirements under the ECOA are to be given the broadest reading allowed under Article III of the U.S. Constitution. Plaintiffs' sole support for their proposition is one sentence from the legislative history of the 1976 amendments to the ECOA; however, plaintiffs' citation to the legislative history is incomplete.

In the report cited by plaintiffs, Congress suggests that courts use decisions from the employment discrimination field as guides in the application of the ECOA. *S.Rep.* at 406. The complete passage from the Senate Report reads as follows:

> The prohibitions against discrimination on the basis of race, color, religion or national origin are unqualified. In the Committee's view, these characteristics are totally unrelated to credit worthiness and cannot be considered by any creditor. In determining the existence of discrimination on these grounds, as well as on the other grounds discussed below, courts or agencies are free to look at the effects of a creditor's practices as well as the creditor's motives or conduct in individual transactions. Thus, judicial constructions of anti-discrimination legislation in the employment field, in cases such as *Griggs v. Dyke Power Company,* 401 U.S. 424 [91 S.Ct. 849, 28 L.Ed.2d 158] (1971); and *Albemarle Paper Company v. Moody* [95 S.Ct. 2362, 422 U.S. 405, 45 L.Ed.2d 280] (1975), are intended to serve as guides in the application of this Act, *especially with respect to the allocations of burdens of proof.*

*S.Rep.* at 406 (emphasis added) (footnote omitted).

The court does not read this portion of the Senate Report as a congressional mandate to eliminate all prudential limitations to standing under the ECOA; instead, the court construes this statement for what it is—a guide for judicial constructions in the application of the ECOA, for example, in allocating burdens of proof. *See Cragin v. First Federal Savings and Loan Association,* 498 F.Supp. 379, 384 (D.C.Nev.1980) (holding that plaintiff was not an "applicant" and citing the relevant portion of the Senate Report).

Furthermore, in finding a congressional intent to define standing as broadly as is permitted under Article III in FHA cases, the *Trafficante* Court, like the *Hackett* court before it, was able to point to and rely upon the broad and inclusive language of the statute in question. 409 U.S. at 209–10, 93 S.Ct. at 366–67. For example, the FHA protects "any person who claims to have been injured by a discriminatory housing practice," the ECOA, on the other hand, does not employ such broad terms, it refers specifically to "applicants," and only "applicants."

tion to dismiss NIOHC's ECOA claim for lack of standing is hereby GRANTED.

## IV.

Finally, defendants seek dismissal of plaintiffs Hanley's and NIOHC's FHA claim (H 86–716) for failure to state a cause of action. According to plaintiffs' complaint, the Hanleys applied for a home equity loan for the dual purpose of buying an automobile and to pay for a college education. Defendants argue that the FHA concerns housing and housing-related matters and that plaintiffs' loan application for buying an automobile and an education is not housing related and thus is not within the scope of the FHA.

### A.

Section 3604 of the FHA provides in part:

**Discrimination in the sale or rental of housing.** As made applicable by section 803 [42 USCS § 3603] and except as exempted by sections 803(b) and 807 [42 USCS §§ 3603(b), 3671], it shall be unlawful—

(a) To refuse to *sell* or *rent* after the making of a bona fide offer, or to refuse to negotiate for the *sale* or *rental* of, or otherwise make unavailable or deny a dwelling to any person because of race, color, religion, sex, or national origin.

42 U.S.C. § 3604(a) (emphasis added).

■ Plaintiffs allege that defendants discriminated against the Hanleys by refusing to give them an equity loan on their already-owned home. The Hanleys are not seeking to purchase or rent a home or an apartment; instead, they were attempting to obtain additional financing on their already-owned home in order to purchase an automobile and an education. Section 3604 is entitled "Discrimination in *sale* or *rental* of housing" while section 3605 is entitled "Discrimination in the *financing* of housing" (emphasis added). Thus, insofar as plaintiffs' complaint alleges an illegal denial of financing, their claim must be brought, if at all possible, under section 3605. *Accord, Thomas v. First Federal Savings Bank of Indiana,* 653 F.Supp. 1330, 1337 (N.D.Ind.1987). Otherwise, if

section 3604 were read to reach every discriminatory act which might conceivably involve housing, section 3605's "specific prohibition of discrimination in the provision of financing would [be] superfluous." *Mackey v. Nationwide Ins. Companies,* 724 F.2d 419, 423 (4th Cir.1984).

Furthermore, the Seventh Circuit in *Southend Neighborhood Improvement Assoc. v. County of St. Clair,* 743 F.2d 1207 (1984), when construing the scope of section 3604, stated that "[s]ection 3604(a) applies to the *availability of housing.* That section thus is violated by discriminatory actions, or certain actions with discriminatory effects, that affect the *availability of housing.*" *Id.* at 1210 (emphasis added). The plaintiffs in *Southend* alleged that the county's discriminatory refusal to properly manage the properties it owned damaged their interests in neighboring properties. The court, in finding that section 3604 was not meant to cover such actions, held that section 3604 is "designed to ensure that no one is denied the right to live where they choose for discriminatory reasons, but it does not protect the intangible interests in the already-owned property raised by the plaintiffs [sic] allegations." *Id.*

Like the plaintiffs in *Southend,* the Hanleys are seeking to protect their interests in their already-owned property. The Hanleys alleged that First Federal racially discriminated against them by denying their application for an equity loan. Because their allegations concern the availability of additional financing, and not the availability of housing, the court finds that section 3604 is not implicated by plaintiffs' complaint. Accordingly, plaintiffs have failed to state a claim under section 3604.

### B.

Section 3605 provides:

**Discrimination in financing of housing**

After December 31, 1968, it shall be unlawful for any bank, building and loan association, insurance company or other corporation, association, firm or enterprise whose business consists in whole or in part in the making of commercial real

estate loans, to deny a loan or other financial assistance to a person applying therefor *for the purpose of purchasing, constructing, improving, repairing, or maintaining a dwelling,* or to discriminate against him in the fixing of the amount, interest rate, duration, or other terms or conditions of *such loan* or other financial assistance, because of the race, color, religion, sex, or national origin of such person or any person associated with him in connection with such loan or other financial assistance or the purpose of *such loan* or other financial assistance, or of the present or prospective owners, lessees, tenants, or occupants of the dwelling or dwellings in relation to which *such loan* or other financial assistance is to be made or given: Provided, That nothing contained in this section shall impair the scope of effectiveness of the exception contained in section 3603(b) of this title.

42 U.S.C. § 3605 (emphasis added).

 As the emphasized portions of section 3605 reveal, the statute covers loans made "for the purpose of purchasing, constructing, improving, repairing, or maintaining a dwelling"; in other words, the loans protected by section 3605 are those concerning housing-related matters. To ignore the for-the-purpose-of language in the statute would render that portion of section 3605 superfluous. *Cf. Mackey,* 724 F.2d at 423.

Moreover, this court's reading of the statute comports with the well-publicized congressional intent of the FHA. The goal of the FHA is to provide "open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos of racial groups whose lack of opportunity the [FHA] was designed to combat." *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283, 1289 (7th Cir.1977). Senator Walter Mondale, who aided in drafting the FHA, stated that the reach of the proposed law was to replace the ghettos with "truly integrated and balanced living patterns." *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 211, 93 S.Ct. 364, 367, 34

L.Ed.2d 415 (1972) (citing 114 Cong.Rec. 3422)). These statements make clear that the FHA is designed to address the problem of increased segregation of minorities; the solution being sought by Congress through the FHA is to make housing equally available to all citizens. The statute is not concerned with the availability of automobiles or education.

Based on the foregoing, the Court holds that in seeking a loan to purchase an automobile and to finance a college education, plaintiffs have failed to state a claim under the FHA. Accordingly, defendants' motion to dismiss the Hanleys' and NIOHC's FHA claim is hereby GRANTED.

### V.

### CONCLUSION

It is therefore ORDERED that defendants' motion to dismiss plaintiffs' section 1982 claims, 42 U.S.C. § 1982, is hereby DENIED. Defendants' motion to dismiss NIOHC's ECOA claim, 15 U.S.C. § 1691, is hereby GRANTED; likewise, defendant's motion to dismiss plaintiffs Hanleys' and NIOHC's FHA claim, 42 U.S.C. §§ 3604 & 3605, is hereby GRANTED.