SOUTHEND NEIGHBORHOOD IM-PROVEMENT ASSOCIATION, et al., Plaintiffs-Appellants,

v.

COUNTY OF ST. CLAIR, et al., Defendants-Appellees.

No. 83–1755.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1983.

Decided Sept. 17, 1984.

Rehearing and Rehearing En Banc Denied Oct. 23, 1984.

Lois Wood, Land of Lincoln Legal Assistance Foundation, Inc., St. Louis, Ill., for plaintiffs-appellants.

Gary L. Bement, Asst. State's Atty., Belleville, Ill., for defendants-appellees.

Before BAUER and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

BAUER, Circuit Judge.

The plaintiffs, seven not-for-profit community organizations in East St. Louis, Illinois, and five individual homeowners, sued the defendants, the County of St. Clair, the County Board, and sixteen of its members (collectively "the County"), alleging that County policies regarding treatment of tax delinquent properties discriminated against them and similarly situated blacks in St. Clair County.

The County Board, as trustee for the taxing districts in St. Clair County, regularly bids at sales of tax delinquent properties and obtains certificates of purchase and tax deeds for those properties. The complaint states that the County held more than 5,000 properties by tax deed at the time this suit was filed.

The plaintiffs allege in their class action complaint that the County failed to fulfill its obligation to maintain the properties it holds in predominately black neighborhoods. The plaintiffs claim that the County is obliged either to board up or demolish the dilapidated buildings on these properties. The plaintiffs allege that the County's breach of its obligations diminished the value of their own properties in these neighborhoods and prevented them from securing loans and making other contracts related to their properties.

The district court declined jurisdiction over this case on the basis of the Tax Injunction Act, 28 U.S.C. § 1341 (1948), and the *Pullman* and *Burford* doctrines of abstention.[1] The court stated that granting the relief the plaintiffs seek would constitute an impermissible intrusion into the County's ability to collect taxes. The court later denied a motion to vacate its order. The court determined that the plaintiffs have a plain, speedy, and efficient remedy under Illinois laws in state court for their claims against the County, and thus stayed the federal action pending the outcome of state court proceedings. The plaintiffs appealed the stay.

After oral argument on the abstention issues, we asked the parties to submit briefs addressing whether the complaint stated a claim upon which relief can be granted. We now hold that the complaint does not state a claim for relief and there-

---

**1.** *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

fore remand with instructions that the claims be dismissed.

I

The plaintiffs first claim that the County violated Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3619 (1978) (the Fair Housing Act), which forbids discrimination in making available or providing services related to housing.

The Fair Housing Act states in part that it shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.

42 U.S.C. § 3604(a) & (b) (1974). Congress's purpose in enacting the Act was "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601 (1968). Courts thus have applied the Act broadly within its terms. *See, e.g., Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978) (*Arlington Heights II*). In *Arlington Heights II,* for example, this court determined that under certain circumstances a violation of Section 3604(a) can be established by a showing of the discriminatory effects of particular practices without a showing of discriminatory intent. The court noted, however, that not every action which produces discriminatory effects is necessarily illegal. 558 F.2d at 1290 (citing Brest, *The*

*Supreme Court, 1975 Term—Forward: In Defense of the Antidiscrimination Principle,* 90 Harv.L.Rev. 1, 28–29 (1976)).

The issue in this case is whether the alleged County practices, assuming they occurred,[2] violated the Fair Housing Act by "otherwise mak[ing] unavailable or deny[ing]" a dwelling to any person because of race or of discriminating "in the provision of services or facilities" in connection with the sale or rental of a dwelling. The complaint charges:

38. The County of St. Clair, at all times relevant to this action, with respect to property to which it holds a tax deed, and which is located in predominantly black areas, (1) has failed and refused to comply with its statutory obligation to prevent waste on any of the premises involved, and to ensure that the premises are maintained in good condition and repair, that the subject property is preserved, and that the public's safety, with respect to such property, is protected; (2) has failed and refused to comply with its obligations under local ordinances to demolish all unsafe buildings on such property; and (3) has failed and refused to comply with its obligation to maintain that property in such a manner that the health and welfare of residents of the surrounding neighborhood is not endangered.

The Fair Housing Act prohibits both direct discrimination and practices with significant discriminatory effects. For example, although Section 3604(a) applies principally to the sale or rental of dwellings, courts have construed the phrase "otherwise make unavailable or deny" in subsection (a) to encompass mortgage "redlining," insurance redlining, racial steering, exclusionary zoning decisions, and other actions by individuals or governmental units which directly affect the availability of housing to minorities.[3] Of course, the alleged illegal ac-

---

2. We must assume that the allegations in the complaint are true, and may not dismiss the complaint unless it appears beyond doubt that no set of facts in support of the allegations would entitle the plaintiffs to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

3. *See, e.g., Halet v. Wend Investment Co.,* 672 F.2d 1305 (9th Cir.1982) (discriminatory rental decisions); *United States v. City of Parma,* 661 F.2d 562 (6th Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982) (various actions by city including rejection of public and low-income housing and adoption of re-

tions must lead to discriminatory effects on the availability of housing. *See United States v. Youritan Construction Co.,* 370 F.Supp. 643, 648–49 (N.D.Cal.1973), *aff'd,* 509 F.2d 623 (9th Cir.1975). The Act is concerned with ending racially segregated housing. *See Woods-Drake v. Lundy,* 667 F.2d 1198 (5th Cir.1982). Section 3604(a) applies to the availability of housing. That section thus is violated by discriminatory actions, or certain actions with discriminatory effects, that affect the availability of housing.

The plaintiffs claim that the County's discriminatory refusal to properly manage the properties it owns damaged their interests in neighboring properties. This claim is quite different from most of the practices that courts have deemed illegal under Section 3604(a). Courts have applied this subsection to actions having a direct impact on the ability of potential homebuyers or renters to locate in a particular area, and to indirectly related actions arising from efforts to secure housing. *See, e.g., Dillon v. AFBIC Development Corp.,* 597 F.2d 556 (5th Cir.1979); *Williams v. Matthews Co.,* 499 F.2d 819 (8th Cir.), *cert. denied,* 419 U.S. 1021 & 1027, 95 S.Ct. 495 & 507, 42 L.Ed.2d 294 & 302 (1974). On the other hand, the plaintiffs here do not allege that they have been hindered in an effort to acquire a dwelling, but rather that the County's conduct toward certain properties damaged their own property.

■ We hold that the County's actions here could not have affected the availability of housing in a manner implicating Section 3604(a) of the Fair Housing Act. Section 3604(a) is designed to ensure that no one is denied the right to live where they choose for discriminatory reasons, but it does not protect the intangible interests in the already-owned property raised by the plaintiffs allegations.

■ Similarly, the Section 3604(b) prohibition against discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling does not encompass the plaintiffs' allegations. That subsection applies to services generally provided by governmental units such as police and fire protection or garbage collection; the County decisions regarding how to administer properties it holds by tax deeds are distinct from these types of services. *See Mackey v. Nationwide Insurance Cos.,* 724 F.2d 419, 423–24 (4th Cir. 1984).[4]

The complaint states that a large majority of blacks live in concentrated areas in St. Clair County. The plaintiffs claim that the County is but one of many entities discriminating against them. Yet, whether practices of landlords, bankers, real estate brokers, insurers, or governmental units, including other practices of the County, violate the Fair Housing Act is not material to this case. Here we have only a claim that the County's inaction regarding certain properties violated Section 3604. The Act was not designed to address the concerns raised by the complaint.

## II

■ The plaintiffs next claim that the County violated Sections 1982 and 1981. Section 1982, which derived from Section 1 of the Civil Rights Act of 1866 and was codified into its present form in 1874, prohibits racial discrimination in the sale and rental of real property. The statute ensures that blacks have real property rights equal to whites. *Jones v. Alfred Mayer Co.,* 392 U.S. 409, 443, 88 S.Ct. 2186, 2205, 20 L.Ed.2d 1189 (1968). Although Section 1982 is not a comprehensive housing law

---

strictive land use ordinances); *Marable v. H. Walker & Associates,* 644 F.2d 390 (5th Cir. 1981), *appeal after remand,* 704 F.2d 1219 (11th Cir.1983) (unequal application of rental criteria by landlord); *United States v. Mitchell,* 580 F.2d 789 (5th Cir.1978) (racial steering); *United States v. City of Black Jack,* 508 F.2d 1179 (8th Cir.1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975) (adoption of restrictive zoning law).

**4.** Based on our determination that the complaint does not state a claim under Section 3604 of the Fair Housing Act, and for the reasons discussed in Section II of this opinion, the plaintiffs also have not stated a claim under Section 3617 of the Act, which protects against interference with any person in the exercise of rights protected under the Act. The County's conduct did not constitute third-party interference with Fair Housing Act rights.

and does not encompass many of the specific prohibitions in the Fair Housing Act, *Jones*, 392 U.S. at 413–17, 88 S.Ct. at 2189–91, it applies to all racially motivated refusals to sell or rent housing. *See City of Memphis v. Greene*, 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981). The plaintiffs allege that the County's policies in regard to the tax deed properties interfered with their right to hold and enjoy their properties.

Section 1981, which also derived from the Civil Rights Act of 1866, guarantees equal rights in the making and enforcing of contracts. The plaintiffs allege that the County's conduct interfered with their opportunities to enter contracts regarding their properties with banks, insurance companies, and other businesses.

Plaintiffs alleging a violation of Section 1982 must demonstrate that the defendants' conduct impaired their property interests. *See City of Memphis*, 451 U.S. at 120–24, 101 S.Ct. at 1596–98. For example, in *City of Memphis* the United States Supreme Court held that a city's decision to close a street did not impair the kind of property interests encompassed by Section 1982. The Court ruled that the district court record revealed that the street closing did not reflect discriminatory practices. Similarly, plaintiffs claiming that their Section 1981 rights have been impaired must show that the defendants discriminatorily interfered with their right to make contracts. In *Wright v. Salisbury Club, Ltd.*, 632 F.2d 309 (4th Cir.1980), for example, the Fourth Circuit recognized that a denial of membership by a privately owned club to local residents because of their race violated Section 1981. That court also held that because club membership was one of the rights bought by purchasers of homes in the subdivision where the club was located, denying membership to the plaintiffs on the basis of race constituted impairment of an equal right to purchase property under Section 1982. These cases illustrate that "the threshold inquiry under § 1982 must focus on the relationship between the [allegedly wrongful activity] and the property interest of the [complaining parties]," *City of Memphis*, 451 U.S. at 123, 101 S.Ct. at

1598, just as the initial inquiry under Section 1981 is on the connection between the defendants' actions and the plaintiffs' ability to contract. This approach exposes the flaw in the plaintiffs' complaint. The relationship between the County's conduct and the alleged injuries to the plaintiffs' neighboring properties is too tenuous to support a claim that the plaintiffs' contract or property rights under Sections 1981 and 1982 were infringed. In our opinion, the County's decisions not to repair or remove certain buildings could not have impaired, under the allegations in the complaint, the plaintiffs' ability to enter into contracts and to hold property. The causal nexus in these circumstances between the inaction toward disrepair on one lot and the alleged effects on neighboring lots is unsubstantial. Although the condition of a neighborhood's properties effects both the quality of the neighborhood and the value of its property, the plaintiffs have not alleged how the County practices affected the condition of the neighborhoods. The allegations state that the County refused to fulfill its obligations and therefore the plaintiffs' rights were violated. Yet we can discern no link between the two allegations. The complaint states that the housing in black neighborhoods is substandard and deteriorated. The complaint also states that some of the properties held by the County are vacant or have dilapidated structures on them. The plaintiffs do not claim, however, that the County was responsible for the condition of the properties it acquired, but only claim that the County did not improve that condition. The plaintiffs fail to allege County actions that infringed their contract and property rights. We believe that any connection between the County's failure to act and an impact on either the plaintiffs' ability to enter into contracts or the value of their property is too remote to support a claim of discrimination.

It is instructive to note that the issues this case does not present. This is not a case where the plaintiffs were denied the right to buy or sell property, lease an apartment, join a club, enter a contract, or accept terms or prices imposed on them

because of their race. Nor is this a case where the County has refused discriminatorily to extend available services to blacks. Instead of these direct incidents of discrimination, this case involves only the effect on residents of the County's decisions regarding how to treat tax delinquent property. In this case, we believe that the County's decisions cannot have caused the alleged injuries.

In addition, even if the plaintiffs suffered an indirect impact from the County's policies, those injuries cannot support a claim of discrimination. The impact of an allegedly wrongful activity clearly must be more than negligible to constitute a cognizable claim. For example, although the Supreme Court in *City of Memphis* did not decide what magnitude of harm was required to support a Section 1982 claim, the Court noted that an injury at least must amount to more than an inconvenience. 451 U.S. at 120–24, 101 S.Ct. at 1596–98. Here, the plaintiffs' allegations do not indicate that the County's conduct had more than a minimal effect on their rights, and those injuries do not rise to the level necessary to constitute a statutory violation. The plaintiffs' ability to make contracts and manage their properties as protected under Sections 1981 and 1982 could not have been affected in a significant manner by a County decision not to board up or demolish a building.[5] Once again we note that the plaintiffs do not claim that the County affirmatively denied their right to contract or affirmatively altered the character of their communities in a manner that worsened their perceived plight. The plaintiffs have not alleged that through neglect the deterioration of the County properties constituted discriminatory damage to their contract and property rights. They allege only that particular decisions not to tear down or board up certain buildings caused harm. In light of the existing condition of the neighborhoods stated in the complaint,

those particular decisions could not have caused injury constituting a statutory violation.

We also are mindful of the intrusive nature of the remedy that the plaintiffs seek. That remedy would require us to administer St. Clair County's maintenance and demolition program. We decline to do this in the absence of clear allegations that the County's policy caused injuries to the plaintiffs.

In summary, the deleterious conditions that the plaintiffs describe arose at most only indirectly from the allegedly wrongful County conduct. Moreover, whatever impact the County practices had on the plaintiffs' constitutionally protected interests does not constitute the discriminatory impact necessary to state a claim under Sections 1981 and 1982.

### III

■ Finally, the plaintiffs assert two constitutional claims. First, the plaintiffs allege a violation of their equal protection rights secured by the fourteenth amendment. They claim that the County's policy toward its tax delinquent properties had a disproportionate negative impact on blacks. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Mlikotin v. City of Los Angeles*, 643 F.2d 652 (9th Cir.1981). To support an equal protection claim, the plaintiffs must prove unequal treatment of similarly situated persons and racially discriminatory intent or purpose. *Arlington Heights*, 429 U.S. at 265, 97 S.Ct. at 563. In this case, the complaint alleges that the County's policy had a negative impact in the plaintiffs' neighborhoods. The plaintiffs equal protection claim rests on their claim of disproportionate impact. We have decided that the particular conduct alleged in the complaint could not have had a cognizable impact on the injuries alleged in the com-

---

5. The complaint contains no allegation that the character of the neighborhoods in which the County holds property by tax deed has changed since the County acquired those properties. The plaintiffs are attempting to improve living conditions in their neighborhoods, which have a high concentration of poor people, blacks, and substandard housing, by demanding that the County improve the condition of the properties it owns. The County, however, should not be held responsible for the plaintiffs' situation based on allegations regarding only its treatment of the tax delinquent properties.

plaint. Similarly, we believe the plaintiffs cannot prove a disproportionate impact on them from the County's alleged conduct. The County's conduct could have had at most minimal impact. Because the plaintiffs' equal protection rests on an allegation of disproportionate impact, it fails.

■ Second, the plaintiffs' complaint alleges a violation of the thirteenth amendment freedom from involuntary servitude. Because the plaintiffs' Section 1981 contract, Section 1982 property, and fourteenth amendment protections were not violated by the County's alleged conduct, any disparate impact on blacks from the County's conduct could not be fairly characterized as a "badge or incident of slavery." *See City of Memphis*, 451 U.S. at 125–28, 101 S.Ct. at 1599–1600. Any incidental consequences flowing from the County's conduct fall far short of the type of stigmatization the thirteenth amendment was designed to eliminate.

We stress again that the plaintiffs are not foreclosed from pursuing other remedies. The plaintiffs simply have failed to state a cause of action against the County in this case. Our disposition of the case renders it unnecessary for us to consider the issues raised by the district court's orders. This case is remanded to the district court with instructions to dismiss the claims discussed above for failure to state a claim upon which relief can be granted.

SO ORDERED.