Thanda WAI, et al., Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
et al., Defendants.

No. CIV. A. 97–01551(HHK).

United States District Court,
District of Columbia.

Sept. 30, 1999.

**2**

John E. Heintz, Lisa Latorre, Gary Thompson, Howrey & Simon, Washington, D.C., for Plaintiffs.

Ann L. Lamdin, Larry R. Seegull, Piper & Marbury, Baltimore, MD, for Republic Insurance Company.

Donald R. Livingston, Jacqueline R. Depew, Akin Gump Strauss Hauer & Feld, Washington, D.C., for Allstate Insurance Company.

Steven M. Sacks, Andrew T. Karron, Nancy L. Perkins, Arnold & Porter, Washington, D.C., for State Farm Fire and Casualty Company.

## MEMORANDUM AND ORDER

KENNEDY, District Judge.

Plaintiffs allege that defendants violated the Fair Housing Act of 1968, as amended, 42 U.S.C.A. §§ 3601–3631 (West 1994 & Supp.1998) ("FHA"), and the Americans with Disabilities Act of 1990, 42 U.S.C.A. §§ 12181–12189 (West 1995 & Supp.1998) ("ADA"), by refusing to provide standard landlords' insurance or by providing insurance at less favorable rates and terms to landlords who rent to disabled tenants. Defendants Allstate Insurance Company ("Allstate") and State Farm Fire and Casualty Company ("State Farm") each have filed a motion to dismiss the complaint claiming that (1) plaintiffs lack standing, (2) the practices about which plaintiffs complain may not be scrutinized under the FHA because of the operation of the McCarran–Ferguson Act, and (3) plaintiffs have failed to state a claim upon which relief may be granted. Upon consideration of the motions and the responses thereto, the court concludes that the motions should be denied.

## I. BACKGROUND

### A. The Individual Plaintiffs

The individual plaintiffs are two landlords, Thanda Wai and Arthur Verbit, who rent their homes to persons with disabilities. In May 1994, Wai purchased a single-family dwelling in Silver Spring, Maryland. For an annual premium of $358, Allstate provided Wai a homeowners' in-

surance policy that included both casualty and liability coverage. In October 1995, Wai rented her house to an organization that provides housing for handicapped individuals, Christians for Assisted Living for the Mentally Retarded Association ("CALMRA").

After signing the lease, Wai contacted her Allstate agent, James Dooley, and requested that Allstate change her homeowners' policy to a landlord policy. Dooley provided Wai with an initial quote of $426 per year for casualty and liability insurance. Dooley then inquired about the tenants and learned that they were three handicapped women and a live-in counselor. Dooley immediately withdrew the insurance offer. A few days later, Dooley confirmed that Allstate refused to provide standard landlord insurance because there were handicapped tenants in the household. Dooley informed Wai that she would need to obtain commercial insurance and recommended a different agency. Allstate canceled Wai's existing policy.

Wai contacted State Farm. State Farm's agent, James Reid, informed Wai "that it was State Farm's policy that where a house is occupied by handicapped individuals and a counselor or other assistance is provided to them, the house is considered a 'commercial operation' outside the scope of State Farm's insurable risk." Complaint ¶ 19. State Farm refused to provide Wai with any insurance, instead referring her to another insurance agency through which she purchased a commercial landlord policy that only provided fire insurance and cost $686 per year.

Arthur Verbit has been renting his house to handicapped tenants as an Oxford House since 1991. In April 1995, Verbit purchased a homeowners' liability insurance policy from Republic Insurance Company ("Republic") for $315 per year. After Republic sent an inspector to the house, Verbit's insurance agent called to inquire about the tenants. When Verbit explained that the house was an Oxford House, the agent stated that the house was considered a boarding house for which Verbit would have to obtain commercial insurance. Republic subsequently canceled Verbit's policy, stating that "the house is 'a group home' and therefore posed an unacceptable 'hazard' to the company." Compl. ¶ 33. Verbit eventually obtained fire and casualty insurance at an annual premium of $810.

## B. The Organizational Plaintiffs

### 1. The Fair Housing Council of Greater Washington ("FHC")

The FHC is a not-for-profit corporation that exists "to promote the equal availability of housing to all persons without regard to race ... or handicap." Compl. ¶ 9. The FHC alleges that it has had to divert scarce resources from its "usual testing, education, counseling and referral services" to its investigation of defendants' actions and its efforts to counteract them. Compl. ¶ 37, 39. Defendants' practices have frustrated the FHC's mission of identifying and eliminating discriminatory housing practices by thus "impeding [the FHC's] efforts to educate the public about discriminatory housing practices and to provide counseling and referral services to the public about housing discrimination." Compl. ¶ 39.

### 2. Oxford House, Inc.

Oxford House, Inc., is a not-for-profit corporation that assists recovering alcoholics and drug addicts in locating rental properties and establishing group homes. Oxford House organized the rental of plaintiff Verbit's house. Defendants' discriminatory practices have allegedly "(1) interfered with all the efforts and programs of Oxford House and its affiliates; (2) forced Oxford House and its affiliates to devote scarce resources to identify and counteract Defendants' unlawful practices; and (3) interfered with the fair housing rights of Oxford House and its affiliates." Compl. ¶ 42.

**4**

## II. STANDARD OF REVIEW

In evaluating a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept the allegations in the complaint as true. *See, e.g., Croixland Properties Ltd. Partnership v. Corcoran,* 174 F.3d 213, 215 (D.C.Cir.1999). All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss a complaint for failure to state a claim " 'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Id.* (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Price v. Crestar Secs. Corp.,* 44 F.Supp.2d 351, 352–5 (D.D.C.1999). A court "does not test whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim." *Price,* 44 F.Supp.2d at 353.

## III. STANDING

### A. Legal Standard

■ "Congress intended standing under the Fair Housing Act to extend to the full limits of Article III." *Spann v. Colonial Village, Inc.,* 899 F.2d 24, 27 (D.C.Cir. 1990) (internal quotation marks omitted); *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). To establish standing under Article III, a plaintiff must establish the following: 1) that the plaintiff suffered an "injury in fact"; 2) that the injury is "fairly traceable to the challenged action of the defendant"; and 3) that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Animal Legal Defense Fund, Inc. v. Glickman,* 154 F.3d 426 (D.C.Cir.1998) (en banc), *cert. denied sub nom. National Ass'n for Biomedical Re-*

*search v. Animal Legal Defense Fund,* —— U.S. ——, 119 S.Ct. 1454, 143 L.Ed.2d 541 (1999).

■ The same three-part analysis is used whether plaintiff is an individual or an organization. *See Spann v. Colonial Village, Inc.,* 899 F.2d 24, 27 (D.C.Cir. 1990) ("An organization has standing on its own behalf if it meets the same standing test that applies to individuals."). An organization can show injury in fact by "point[ing] to a 'concrete and demonstrable injury to [its] activities, not simply a setback to the organization's abstract social interests.' " *Id.* (quoting *Havens,* 455 U.S. at 379, 102 S.Ct. 1114).

### B. Analysis

■ Defendants contend that the FHC lacks standing because it has not alleged a concrete and demonstrable injury, and that "it cannot do so because, as the Complaint so clearly implies, not a single disabled individual was denied housing or injured in any other way in this case."[1] Allstate Mem. Supp. Mot. Dismiss at 9. This argument is irrelevant to the question whether the FHC has standing to sue for injuries that it has suffered as an organization. An organization's standing to sue in its own right is determined by the injuries that it has suffered, not by the injuries suffered by those the organization seeks to protect. *See Havens,* 455 U.S. at 378–79, 102 S.Ct. 1114.

■ In this case, the FHC's allegations parallel those that the Supreme Court held to be sufficient to establish standing in *Havens,* 455 U.S. at 363, 102 S.Ct. 1114 and that the Court of Appeals for this Circuit found sufficient in *Spann,* 899 F.2d at 28. In *Havens,* the Supreme Court reasoned as follows:

> If, as broadly alleged, [defendant's] … practices have perceptibly impaired

---

1. Allstate also contends that Verbit and Oxford House lack standing because they have not alleged that Allstate discriminated against them. The propriety of allowing Verbit and Oxford House to remain plaintiffs in this suit

is more appropriately characterized as a joinder issue than a standing issue, and will be addressed when the court renders its decision regarding defendants' motions to sever.

[plaintiff's] ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered an injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests.

*Havens*, 455 U.S. at 378–79, 102 S.Ct. 1114. The FHC has alleged sufficient injury to withstand a motion to dismiss for lack of standing.[2]

## IV. McCARRAN–FERGUSON ACT

The McCarran–Ferguson Act provides in relevant part:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.

15 U.S.C.A. § 1012(b). In *Humana, Inc. v. Forsyth*, the Supreme Court explained that "[w]hen federal law does not conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran–Ferguson Act does not preclude its application." 525 U.S. 299, 119 S.Ct. 710, 717, 142 L.Ed.2d 753 (1999).

██ Defendants argue that, under the McCarran–Ferguson Act, application of the FHA to its practices is preempted by the insurance laws of Maryland, the state in which Wai applied for insurance. While defendants do not identify a state law with which the FHA conflicts[3] or a declared

state policy that application of the FHA would frustrate,[4] defendants contend that applying the FHA to insurers would interfere with Maryland's regime for administering Maryland insurance companies. Specifically, defendants maintain that application of the FHA to insurers would contradict the Maryland Code's grant of exclusive jurisdiction over insurance complaints to the Insurance Commissioner. Allstate Mem. Supp. Mot. Dismiss at 15.

The defendants' argument is without merit. The same provision that defendants cite for the proposition that the Insurance Commissioner has **exclusive** jurisdiction grants the "Human Relations Commission ... **concurrent** jurisdiction ... over alleged discrimination." Md. Code Ann., Ins. § 2–202 (emphasis supplied). Therefore, defendants' claim that the McCarran–Ferguson Act prohibits the application of the FHA to insurance practices is unpersuasive and must be rejected.

## V. FAIR HOUSING ACT

Defendants argue that plaintiffs have failed to state a claim under FHA sections 3604(f)(1), 3604(f)(2), and 3604(f)(3)(B). Fed.R.Civ.P. 12(b)(6). None of these arguments has merit.

### A. 42 U.S.C. § 3604(f)(1)

██ Section 3604(f)(1) declares it unlawful

[t]o discriminate in the sale, or rental, or to otherwise *make unavailable or deny,* a dwelling to any buyer or renter *because of a handicap of*—

(A) that buyer or renter;

---

**2.** Of course, the FHC "must ultimately prove at trial that the defendants' illegal actions actually caused them to suffer the alleged injuries before they will be entitled to judicial relief." *Spann,* 899 F.2d at 29.

**3.** In contrast, the plaintiffs point to Section 27–501(b)(1) of the Maryland Insurance Code which provides that "an insurer may not require special conditions, facts or situations as a condition to its acceptance or renewal of a

particular insurance risk ... in a discriminatory manner based wholly or partly on ... physical handicap or disability," Md.Code Ann., Ins. § 27–501(b) (1998). Pl.'s Opp. Mot. Dismiss at 19.

**4.** The declared policy of the State of Maryland is to prohibit discrimination, *see* Md.Code Ann., Ins. § 27–501(b), a policy that is likely to be furthered, not frustrated, by the application of the FHA.

(B) *a person residing and intending to reside in that dwelling* after it is sold, rented or made available; or

(C) *any person associated with* that buyer or renter.

42 U.S.C. § 3604(f)(1) (emphasis added). This case presents the question whether the refusal to provide standard property insurance at ordinary rates to landlords who rent their homes to disabled persons makes unavailable or denies a dwelling.

Most courts that have considered the issue have concluded that a denial of homeowners' insurance makes housing unavailable. *See, e.g., Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1357, 1360 (6th Cir.1995) (noting that "the availability of property insurance has a direct and immediate affect on a person's ability to obtain housing"); *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 301 (7th Cir.1992) (holding that "Section 3604 applies to discriminatory denials of insurance, and discriminatory pricing, that effectively preclude ownership of housing"); *see also United States v. Massachusetts Indus. Fin. Agency*, 910 F.Supp. 21, 27 (D.Mass.1996) ("Few if any, banks make home loans to uninsured borrowers. Thus, property insurers in effect have the power to make housing unavailable to potential buyers."); *McDiarmid v. Economy Fire & Cas. Co.*, 604 F.Supp. 105, 107 (S.D.Ohio 1984) ("It is elementary that without insurance, mortgage financing will be unavailable, because a mortgage lender simply will not lend money on the property. Without mortgage financing, homes cannot be purchased."). *But see Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 424 (4th Cir.1984) ("While the [FHA] specifically prohibits discrimination in providing financial assistance, there is no mention in the Fair Housing Act of insurance.").

Pertinent agency regulations also support the conclusion that the denial of homeowners' insurance based on a resident's handicap violates section 3604. In 1988, Congress enacted amendments to the FHA that authorized the Department of Housing and Urban Development ("HUD") to make rules to implement the FHA. *See* 42 U.S.C. § 3614a. Pursuant to this authority, HUD issued regulations stating that "[r]efusing to provide ... property or hazard insurance for dwellings or providing such services or insurance differently because of ... handicap" is conduct prohibited by section 3604. 24 C.F.R. § 100.70. HUD's determination that section 3604 applies to discrimination in insurance policies is reasonable and entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Nationwide*, 52 F.3d at 1360 ("Accordingly, we conclude that HUD's interpretation of the Fair Housing Act is consistent with goals of the Fair Housing Act and a reasonable interpretation of the statute."); *American Family*, 978 F.2d at 301 ("[T]he question today is whether the Secretary's regulations are tenable. They are."); *Strange v. Nationwide Mut. Ins. Co.*, 867 F.Supp. 1209, 1214 (E.D.Pa.1994) ("Given the deference that is due an agency's congressionally delegated and plausible construction of a statute, the existence of this regulation supports plaintiffs' position that Section [3604] applies to the business of insurance.").

The position taken by most of the courts that have considered this issue and the agency responsible for enforcing the FHA is reasonable. If, in order to rent to disabled persons, a landlord must risk losing her home through loss of mortgage financing, loss of catastrophe insurance, and loss of liability insurance, she will be disinclined to rent to disabled persons. Such powerful disincentives to rent to disabled persons, make housing unavailable to them. Nothing in the FHA requires that before filing suit plaintiffs must either lose their homes or refuse to rent to persons with disabilities. Such a requirement would directly contravene the purposes of the FHA.

Defendants primarily rely on two cases to support their contention that their denial of insurance does not make a dwelling unavailable, *Clifton Terrace Associates,*

*Ltd. v. United Technologies Corp.*, 929 F.2d 714 (D.C.Cir.1991), and *Southend Neighborhood Improvement Association v. St. Clair County*, 743 F.2d 1207 (7th Cir. 1984). Both of these cases are inapposite.

In *Clifton Terrace*, the United States Court of Appeals for this Circuit held that a landlord could not sue an elevator manufacturer under the FHA for refusing to provide repair service to the landlord's premises. *See* 929 F.2d at 719. The Court of Appeals noted that section § 3604(f)(1) "reach[es] only discrimination that adversely affects the availability of housing." *Id.* "A lack of elevator service is a matter of habitability, not availability, and does not fall within the terms of [§ 3604(f)(1) ]." *Id.* In this case, however, the court is presented with an issue of availability because, as discussed above, a lack of property insurance makes housing unavailable.

In *Southend*, the Seventh Circuit held that landowners could not state a claim under the FHA against a county for the county's failure to maintain the properties it owned in minority areas. *See* 743 F.2d at 1210. The landowners alleged that the county's failure to maintain its properties diminished the landowners' interests in neighboring properties. *See id.* at 1209. The Seventh Circuit rejected the plaintiffs' claims, noting that "[t]his claim is quite different from most of the practices that courts have deemed illegal under Section 3604(a)." *Id.* at 1210. "[C]ourts have construed the phrase 'otherwise make unavailable or deny' ... to encompass mortgage 'redlining,' *insurance redlining*, ... and other actions by individuals ... which directly affect the availability of housing to minorities." *Id.* at 1209 (emphasis added). Thus, the *Southend* court distinguished the case before it from cases involving allegations of discriminatory insurance practices, such as the case at bar.

The court concludes that plaintiffs have stated a claim under 42 U.S.C. § 3604(f)(1). Consequently, defendants' motions to dismiss with respect to this claim must be denied.

**B. 42 U.S.C. § 3604(f)(2)**

Section 3604(f)(2) declares it unlawful

[t]o discriminate against any person ... *in the provision of services* or facilities *in connection with such dwelling, because of a handicap of—*

(A) that person;

(B) *a person residing and intending to reside in that dwelling* after it is sold, rented or made available; or

(C) *any person associated with that person.*

42 U.S.C.A. § 3604(f)(2) (emphasis added).

Defendants argue that plaintiffs cannot state a claim under section 3604(f)(2) because this section only applies to landlords or providers of housing. Allstate Mem. Supp. Mot. Dismiss at 23. Defendants' contention that section 3604(f)(2) only applies to landlords or providers of housing is contrary to the interpretation of § 3604(f)(2) that most of the courts which have addressed the issue have adopted. *See, e.g., Nationwide*, 52 F.3d at 1360; *American Family*, 978 F.2d at 300–01; *Strange*, 867 F.Supp. at 1214. *But see Mackey*, 724 F.2d at 424 (4th Cir.1984) (holding that the FHA does not apply to insurance).

In addition, defendants' position is contrary to HUD regulations, which provide that it is unlawful "to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons" because of handicap. 24 C.F.R. § 100.70(b). Prohibited conduct includes "[r]efusing to provide municipal services or property or hazard insurance." 24 C.F.R. § 100.70(d)(4). HUD's regulations are reasonable and should be given deference. *See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Nationwide*, 52 F.3d at 1360; *American Family*, 978 F.2d at 301.

In support of their proposition that § 3604(f)(2) is limited to landlords and other providers of housing, defendants cite *Clifton Terrace*. In *Clifton Terrace*, how-

ever, the Court of Appeals for this Circuit noted that section § 3604(f)(2) applies to "those who provide housing and then discriminate in the provision of attendant services or facilities, *or those who otherwise control the provision of housing services and facilities.*"[5] 929 F.2d at 720 (emphasis added). Property insurers fit the latter category.

The court concludes that plaintiffs have stated a claim under 42 U.S.C. § 3604(f)(2). Consequently, defendants' motions to dismiss with respect to this claim must be denied.

### C. 42 U.S.C. § 3604(f)(3)(B)

■ Section 3604(f)(3)(B) provides that "discrimination includes ... a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C.A. § 3604(f)(3)(B). Defendants argue that this section only covers conduct that deprives a person with a disability the opportunity to live in, use or enjoy a home. Defendants further contend that "§ 3604(f)(3) imposes only an 'affirmative duty upon *landlords* reasonably to accommodate the needs of handicapped persons.'" Allstate Mem. Supp. Mot. Dismiss at 24–25 (quoting *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1417 (9th Cir.1994)).[6]

■ As discussed above, the court is persuaded that denial of property insurance can make a dwelling unavailable. If a dwelling is made unavailable to a person with a disability, that person is denied an "equal opportunity to use and enjoy" the dwelling. If a reasonable accommodation

in "rules, policies, practices or services" is necessary to avoid that situation, refusal to provide that accommodation is discrimination under the clear language of the FHA. The obligation reasonably to accommodate the disabled is not limited to landlords. *See, e.g., Smith & Lee Assocs., Inc. v. City of Taylor,* 102 F.3d 781, 795–96 (6th Cir. 1996); *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096, 1104 (3d Cir.1996); *City of Edmonds v. Washington State Bldg.Code Council,* 18 F.3d 802, 806 (9th Cir.1994), *aff'd* 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995).

The court concludes that plaintiffs have stated a claim under 42 U.S.C. § 3604(f)(3)(B). Consequently, defendants' motions to dismiss with respect to this claim must be denied.

## VI. AMERICANS WITH DISABILITIES ACT

■ This case presents the question whether a plaintiff may state a claim under Title III of the ADA not only for denial of physical access to an insurance office but also for denial of insurance policies that are equal or comparable to those offered to persons who are neither disabled nor associated with disabled persons. After carefully considering the statutory language, legislative history, and agency interpretation of Title III, as well as pertinent case law, this court joins several other courts that have considered the issue and holds that Title III's protections extend beyond physical access to insurance offices.[7]

### A. Statutory Language

Title III of the ADA establishes the following "General rule":

---

5. The Court of Appeals' statement that "[i]n the case of rental units, the provision of such services *primarily* falls under the control of the provider of housing ..." *Clifton Terrace,* 929 F.2d at 720 (emphasis added), does not contradict this court's conclusion that a provider· of housing is not the *only* service provider whose discriminatory conduct may be actionable under the FHA.

6. Although the case cited by defendants recognizes a landlord's duty reasonably to accommodate a disabled person, there is nothing in that case to suggest that such a duty is limited to landlords. *See generally United States v. California Mobile Home Park Mgmt. Co.,* 29 F.3d 1413 (9th Cir.1994).

7. *See Doe v. Mutual of Omaha Ins. Co.,* 179 F.3d 557, 559, 563 (7th Cir.1999) (focusing on discrimination in the provision of goods and

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a)(F). The term public accommodation is defined to include an "insurance office." *See id.* § 12181(7). By its plain language, therefore, Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, [or] services . . . of [an insurance office]."

42 U.S.C. § 12182(b) provides specific examples of activities that are discriminatory under Title III's general rule. It is, for instance, "discriminatory to subject an individual . . . on the basis of a disability . . . to a denial of the opportunity . . . to participate in or benefit from the goods, services . . . or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i). It is also "discriminatory to afford an individual . . . on the basis of a disability . . . directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service . . . or accommodation that is not equal to that afforded to other individuals." *Id.* § 12182(b)(1)(A)(ii).

"It is axiomatic that courts must interpret statutes 'so as to avoid rendering superfluous any parts thereof.'" *Chabner,* 994 F.Supp. 1185 (N.D.Cal.1998) (quoting *Astoria Fed. Savings & Loan Ass'n v. Solimino,* 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991)). To interpret Title III as limited to physical access to insurance offices, rather than as encompassing the nondiscriminatory provision of insurance policies, would render these provisions meaningless. *See Chabner,* 994 F.Supp. at 1190 ("Finding that Title III applies only to physical barriers to entry would render meaningless the provisions providing for equal access to goods and services"); *cf. Doe v. Mutual of Omaha,* 179 F.3d 557, 560 (7th Cir.1999) ("[S]ince section [12182(a) ] is not limited to physical products, but includes contracts and other intangibles, such as an insurance policy, a limitation upon the duty to serve cannot be confined to physical changes."). These provisions dispose of the question whether Title III is limited to physical access. It is not.

## B. Legislative History and Department of Justice ("DOJ") Regulations

Although analysis of the legislative history of the ADA is unnecessary given the

---

services and acknowledging that Title III applies to insurance policies but holding that the content of the policies is not regulated); *Car-parts Distribution Ctr. v. Automotive Wholesaler's Ass'n,* 37 F.3d 12, 20 (1st Cir.1994) (holding that Title III was not limited solely to goods and services obtained directly/physically from an insurance office); *Conners v. Maine Med. Ctr.,* 42 F.Supp.2d 34, 46 (D.Me. 1999); *Winslow v. IDS Life Ins. Co.,* 29 F.Supp.2d 557, 562 (D.Minn.1998); *Attar v. UNUM Life Ins. Co. of Am.,* No. C.A.96–367, 1998 WL 574885, at *2–*3 (N.D.Tex. Aug.31, 1998); *Chabner v. United of Omaha Life Ins. Co.,* 994 F.Supp. 1185, 1190 (N.D.Cal.1998); *Lewis v. Aetna Life Ins. Co.,* 982 F.Supp. 1158, 1165 (E.D.Va.1997); *Doukas v. Metropolitan Life Ins. Co.,* 950 F.Supp. 422, 425–27 (D.N.H.1996); *Kotev v. First Colony Life Ins. Co.,* 927 F.Supp. 1316, 1321–22 (C.D.Cal. 1996). *But see Ford v. Schering–Plough Corp.,* 145 F.3d 601, 612 (3d Cir.1998) (holding that because plaintiff "received her disability benefits via her employment at Schering, she had no nexus to MetLife's 'insurance office' and thus was not discriminated against in connection with a public accommodation"), *cert. denied* 522 U.S. 1084, 119 S.Ct. 850, 142 L.Ed.2d 704 (1999); *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006, 1010–11 & n. 3 (6th Cir.1997) (holding that Title III does not apply to an insurance policy obtained from an employer, but expressing "no opinion as to whether a plaintiff must physically enter a public accommodation to bring suit"), *cert. denied* 522 U.S. 1084, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998); *Fitts v. Federal Nat'l Mortgage Ass'n,* 44 F.Supp.2d 317, 323–24 (D.D.C.1999) (Urbina, J.); *Fennell v. Aetna Life Ins. Co.,* 37 F.Supp.2d 40, 44 (D.D.C. 1999) (same); *Pallozzi v. Allstate Life Ins. Co.,* 998 F.Supp. 204, 206 (N.D.N.Y.1998); *Pappas v. Bethesda Hosp. Ass'n,* 861 F.Supp. 616, 620 (S.D.Ohio 1994).

clear language of Title III, the court notes that its interpretation of the statute is consistent with both the legislative history and agency interpretation of the ADA.

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.* § 12101(b). Congress found that "individuals with disabilities continually encounter various forms of discrimination, including ... overprotective rules and policies, ... exclusionary qualification standards and criteria, segregation, and relegation to lesser services." 42 U.S.C. § 12101(a)(5). "In drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities." *Kotev v. First Colony Life Ins. Co.*, 927 F.Supp. 1316, 1322 (C.D.Cal. 1996) (citing S.Rep. No. 101–116, at 58 (1989), *reprinted in* 1989 U.S.C.C.A.N. 267, 296).

Congress delegated to the DOJ the authority to promulgate regulations implementing the ADA, *see* 42 U.S.C. § 12186(b), and to issue a Technical Assistance Manual to provide guidance about the statute's requirements, *see id.* § 12206(c)(3). "As the agency directed by Congress to issue implementing regulations, to render technical assistance explaining the responsibilities of covered individuals and institutions, and to enforce Title III in court the [DOJ's] views are entitled to deference." *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2209, 141 L.Ed.2d 540 (1998) (citing *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778) (citations omitted); *see Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 587 (D.C.Cir.1997) (noting that the Technical Assistance Manual " 'represented formal agency action upon which affected parties could reasonably rely,' " which is entitled to deference) (quoting *New York State Dep't of Soc. Servs. v. Bowen*, 835 F.2d 360, 366 (D.C.Cir.1987)). *But see Doe v. Mutual of Omaha*, 179 F.3d 557, 562 (7th Cir.1999) (stating that "it is unsettled how much *Chevron* deference is to be given to an agency's informal policy pronouncements" such as the Technical Assistance Manual).

The preamble to the Title III regulations emphasizes that insurance companies are public accommodations and that the practices of the insurance industry are covered by Title III. The preamble states:

Language in the committee reports indicates that Congress intended to reach insurance practices by prohibiting differential treatment of individuals with disabilities in insurance offered by public accommodations unless the differences are justified. "Under the ADA, a person with a disability cannot be denied insurance or be subject to different terms or conditions of insurance based on disability alone, if the disability does not pose increased risks."

Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 28 C.F.R. Part 36, App. B at 612 (citations omitted). Similarly, the Technical Assistance Manual states that "[i]nsurance offices are places of public accommodation, and, as such, may not discriminate on the basis of disability in the sale of insurance contracts or in the terms or conditions of the insurance contracts they offer." Department of Justice, Title III Technical Assistance Manual § III–3.11000 (1993).

## C. Pertinent Court Decisions

The first Court of Appeals to decide whether Title III applies to insurance policies was the First Circuit. In *Carparts,* the First Circuit rejected the defendants' argument that public accommodations are limited to actual physical structures and held that Title III did not only apply to insurance services actually purchased at a place of public accommodation. *See Carparts Distrib. Ctr. v. Automotive Wholesaler's Assoc. of New England,* 37 F.3d 12, 19–20 (1st Cir.1994). In that case, the First Circuit reasoned that "[m]any goods

and services are sold over the telephone or by mail with customers never physically entering the premises .... To exclude this broad category ... and limit the application of Title III to physical structures which persons must enter to obtain goods and services would run afoul of the purposes of the ADA." *Id.* Regardless of whether plaintiffs ever entered defendants' offices, under the First Circuit's analysis plaintiffs can state a claim under the ADA for being denied on the basis of handicap the goods and services that defendants offered other persons.

In the most recent court of appeals decision to address this issue, *Doe v. Mutual of Omaha*, the Seventh Circuit stated that Title III prohibited discrimination in physical access to insurance offices as well as access to the policies the insurance office offered. *See* 179 F.3d 557, 559 (7th Cir. 1999). As the court explained, "[t]he core meaning of [Section 12182(a)], plainly enough, is that the owner or operator of a store ... or other facility (whether in physical space or in electronic space ...) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility the same way that the nondisabled do." *Id.* In that case, the court found that the defendant, Mutual of Omaha, had not violated the ADA by establishing lower caps on the amount of benefits available for AIDS victims than for victims of other diseases. *See id.* at 563. However, the court stated that there is "a difference between refusing to sell a health-insurance policy at all to a person with AIDS, or charging him a higher price for such a policy ... on the one hand, and, on the other, offering insurance policies that contain caps for various diseases ...." *Id.* In this case, plaintiffs allege not that their insurance coverage would have been capped at a certain limit, but rather that defendants refused to sell them an insurance policy at all, and that ultimately they had to pay a higher price for a less favorable policy than the standard policy offered to landlords. Thus, under the Seventh Circuit's analysis, plaintiffs can state a, claim under the ADA.

The case upon which defendants principally rely, *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006 (6th Cir.1997), does not persuade the court to dismiss plaintiffs' ADA claims. In *Parker*, the Sixth Circuit held that an employer-provided insurance policy is not a good or service provided by a place of public accommodation. *See* 121 F.3d at 1011. Although this court rejects the notion that there must be a "nexus between the disparity in benefits and the services which [defendant insurance company] offers to the public from its insurance office," *id.*, this court notes that plaintiffs' allegations, if true, establish such a nexus. In this case, unlike *Parker*, plaintiffs sought insurance directly from the insurance company, not through an employer. Plaintiffs seek access to the same goods and services, i.e., landlord insurance policies, that defendants provide to other landlords. In dicta, the *Parker* court supported the notion that such a claim is actionable under the ADA: "Title III regulates *the availability of the goods and services the place of public accommodation offers* as opposed to the contents of goods and services offered by the public accommodation." *Parker*, 121 F.3d at 1012 (emphasis added).

After careful review of the ADA's statutory language, legislative history, and agency interpretations, as well as pertinent case law, the court is persuaded that defendants' motions to dismiss plaintiffs' ADA claims must be denied.

## VII. CONCLUSION

For the foregoing reasons, it is this 30th day of September, 1999, hereby

**ORDERED** that defendants' motions to dismiss are **DENIED**.