**UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, INC., Plaintiff–Appellant,**

v.

**METROPOLITAN HUMAN RELATIONS COMMISSION, Defendant–Appellee.**

No. 93–1739.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1993.

Decided May 23, 1994.

Carolyn W. Spengler (argued), Kathleen A. Kilar, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, IN, for United Farm Bureau Mut. Ins. Co.

Samuel L. Bolinger, Asst. Atty. Gen., Fort Wayne Metropolitan Human Relations Com'n, Fort Wayne, IN (argued), for Metropolitan Human Relations Com'n.

Stephen M. Dane, Cooper, Straub, Walinski & Cramer, Toledo, OH, for Nat. Fair Housing Alliance, amicus curiae.

Before LAY,[*] CUDAHY and KANNE, Circuit Judges.

LAY, Circuit Judge.

Richard P. Kesterke ("Kesterke") filed a complaint with the Metropolitan Human Relations Commission of the City of Fort Wayne, Indiana ("Metro"), claiming that United Farm Bureau Mutual Insurance Company, Inc. ("Farm Bureau") refused to renew his homeowner's insurance policy because he lived in a racially mixed neighborhood. Pursuant to the contractual relationship between Metro, which is a local civil rights agency, and the United States Department of Housing and Urban Development ("HUD"), Kesterke was able to file through Metro a complaint under the Fort Wayne fair housing ordinance and also under Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), as amended, 42 U.S.C. §§ 3601–3631 (1988 & Supp. IV 1992). When Metro began investigating Kesterke's complaint, Farm Bureau brought suit in state court against Metro to enjoin its investigation, arguing that Metro lacked proper jurisdiction. Metro removed the suit to federal court, and the district court subsequently denied Farm Bureau's motion to remand the suit to state court. Upon cross-motions for summary judgment, the district court decided that Metro had jurisdiction under the local ordinance to investigate Kesterke's complaint. Farm Bureau appeals the district court's finding of subject matter jurisdiction and the granting of summary judgment in favor of Metro. We affirm in part, modify in part, and remand.

## I. BACKGROUND

In June of 1989, Farm Bureau gave notice to its insured, Kesterke, that it would not renew his homeowner's insurance policy. Kesterke's policy had been in effect since 1984 and he had made two claims for theft losses, in April of 1987 and January of 1989, totaling $2,567.45. In July of 1989, Kesterke filed complaints with Metro alleging that Farm Bureau declined to renew his policy because he lived in a racially mixed neighborhood with a perceived high crime rate. Kesterke, who is white, alleged that Farm Bureau was engaging in the impermissible practice of "redlining." This court has described redlining as "charging higher rates or declining to write insurance for people who live in particular areas." *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993).

Metro's mission, in part, is to "assist in the elimination of discrimination in the City of Fort Wayne." Fort Wayne, Ind., Gen. Ordinance G21–78, art. III (1978). Its creation was made possible by the Indiana Civil Rights Act, which contains general policy statements and authorizes local governments to enact ordinances establishing local human rights commissions. *See* Ind.Code Ann. §§ 22–9–1–12.1(b), 22–9–1–2 (Burns Supp. 1993).[1] Pursuant to these statutes, the City

---

[*] The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The City of Fort Wayne was authorized to create Metro by the following statute:

 Any city, town, or county is hereby authorized to adopt an ordinance or ordinances, which may include establishment or designation of an appropriate local commission, office, or agency to effectuate within its territorial jurisdic-

tion the public policy of the state as declared in section 2 [IC 22–9–1–2] of this chapter without conflict with any of the provisions of this chapter.

Ind.Code Ann. § 22–9–1–12.1(b) (Burns Supp. 1993). The "public policy of the state" provides in relevant part:

 It is the public policy of the state to provide all of its citizens equal opportunity for education, employment, access to public conveniences

of Fort Wayne enacted General Ordinance G21–78, which creates Metro and details Metro's powers and duties. The local ordinance prohibits discrimination in the sale or rental of housing or other real property. Fort Wayne, Ind., Gen. Ordinance G21–78, art. IV, § 2. It is virtually identical to the relevant provisions of the federal Fair Housing Act. *See* 42 U.S.C. § 3604(a)–(b) (1988).[2] Metro is a "certified" agency, which means that HUD has determined that the Fort Wayne General Ordinance under which Metro operates is "substantially equivalent" to the federal Fair Housing Act. *See id.* § 3610(f)(3)(A) (1988).[3] HUD can enter into agreements with certified local agencies by which the agencies, on behalf of HUD, process and investigate complaints made pursuant to the federal Fair Housing Act. *See id.* § 3616 (1988). HUD and Metro have entered into such a contractual relationship, allowing a person to file with Metro a complaint under both the local ordinance and the federal Fair Housing Act.[4]

Kesterke did just that: he filed, with Metro, complaints under Fort Wayne General Ordinance G21–78 and also under the federal Fair Housing Act. In August of 1989, Metro began its investigation of Kesterke's complaint. Farm Bureau filed its answer to the complaint, denying the charges and arguing that Metro did not have subject matter jurisdiction over Kesterke's complaint. Farm Bureau's position essentially was that the complaint involved insurance, which is separately regulated by Indiana law, and that redlining is not a housing matter and is thus outside of Metro's authority. Farm Bureau filed a motion for dismissal on the basis that Metro lacked subject matter jurisdiction over the complaint and also filed a motion for stay of proceedings pending a ruling on the motion for dismissal. In September of 1989, Metro denied Farm Bureau's motion for stay. Metro has yet to rule on the motion for dismissal.

Farm Bureau subsequently attempted to obtain an injunction in Indiana state court. It sought a determination that Metro did not have jurisdiction to investigate Kesterke's complaint and requested that Metro be enjoined from conducting an investigation. Metro removed the case to federal court and the parties stipulated that Metro would not pursue the investigation of Kesterke's complaint until Farm Bureau's action for an injunction was decided. The district court denied Farm Bureau's motion to remand to state court, finding that it had federal question jurisdiction because Kesterke's complaint against Farm Bureau was "dual filed" under the local ordinance and the federal Fair Housing Act.

Farm Bureau and Metro filed cross-motions for summary judgment in March of 1990. Farm Bureau argued that Metro did not have subject matter jurisdiction over a complaint alleging discriminatory acts by an insurance company regarding the nonrenew-

---

and accommodations, and acquisition through purchase or rental of real property, including but not limited to housing, and to eliminate segregation or separation based solely on race, religion, color, sex, disability, national origin or ancestry, since such segregation is an impediment to equal opportunity. Equal education and employment opportunities and equal access to and use of public accommodations and equal opportunity for acquisition of real property are hereby declared to be civil rights.
*Id.* § 22–9–1–2(a) (Burns Supp.1993).

2. The federal Fair Housing Act provides, in pertinent part, that it shall be unlawful:
 (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

 (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
42 U.S.C. § 3604 (1988).

3. For an agency to be certified, the Secretary of HUD must determine that the substantive rights protected by the local agency, the procedures followed by the local agency, the remedies available to the local agency, and the availability of judicial review of local agency actions, are "substantially equivalent" to those created by the federal Fair Housing Act. *See* 42 U.S.C. § 3610(f)(3)(A) (1988).

4. The parties stipulated that Metro received the assignment from HUD on the basis of a mandatory referral pursuant to 42 U.S.C. § 3610(f)(1).

al of a homeowner's policy, and that HUD, acting pursuant to the Fair Housing Act, could not confer jurisdiction upon Metro that is broader than that provided by state law. Metro responded that it possessed jurisdiction under state law to investigate an allegation of redlining.

The cross-motions for summary judgment were taken under advisement by the district court pending a ruling in *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287 (7th Cir.1992), *cert. denied,* ——— U.S. ———, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993), on the issue of whether redlining in the insurance business is a form of racial discrimination violating the federal Fair Housing Act. On October 20, 1992, this court issued its opinion, in which it held that "[s]ection 3604 [of the Fair Housing Act] applies to discriminatory denials of insurance, and discriminatory pricing, that effectively preclude ownership of housing because of the race of the applicant." *Id.* at 301.

Relying on this court's decision in *American Family,* the district court concluded that Metro had jurisdiction under Indiana law to investigate Kesterke's claim of redlining. The court granted summary judgment on behalf of Metro and denied Farm Bureau's motion for summary judgment. Farm Bureau brought this appeal, claiming (1) that the district court should have remanded the case because there is no federal question subject matter jurisdiction; (2) that Metro did not have jurisdiction over Kesterke's complaint under the Indiana Civil Rights Act, and thus the district court erred in denying its motion for summary judgment; (3) that the district court should have certified to the Indiana Supreme Court the question of Metro's jurisdiction; and (4) that the federal Fair Housing Act does not encompass a claim of redlining by a white property owner living in a racially mixed neighborhood.

## II. SUBJECT MATTER JURISDICTION

In allowing Metro to remove the case to federal court, the district court determined that Farm Bureau's request for injunctive relief presented a claim "arising under" the laws of the United States. *See* 28 U.S.C.

§ 1331 (1988). Farm Bureau argues that the district court erred in refusing to remand the case. According to Farm Bureau, there is no federal question at issue and its mention of the federal Fair Housing Act in its complaint was simply an anticipated defense. Furthermore, even if HUD had jurisdiction to investigate Kesterke's complaint, under Indiana state law Metro did not have such jurisdiction, and thus HUD could not refer investigation of a matter to Metro that was outside of Metro's own jurisdiction.

We agree with the district court that Farm Bureau's request for injunctive relief involves a claim that arises under the laws of the United States and thus a federal question is at issue. Kesterke's complaint was "dual filed" under the local ordinance and under the federal Fair Housing Act. Metro undertook to investigate Kesterke's claims under both acts; indeed, in its initial letter to Farm Bureau, Metro stated that Kesterke's complaint was jointly filed with Metro and HUD and that HUD would defer the investigation of its complaint to Metro in accordance with HUD's and Metro's agreement made pursuant to the federal Fair Housing Act.

In response to Metro's investigation, Farm Bureau went to state court attempting to enjoin Metro from conducting an investigation of Kesterke's complaint under state law *and* under the federal Fair Housing Act. In its complaint, Farm Bureau alleged that Kesterke filed a complaint with Metro and with HUD and that Metro "lacks subject matter jurisdiction over Richard Kesterke's Complaint, either under I.C. 22–9–1–1 *et seq.* or under 42 U.S.C. § 3601–3614a, neither of which pertain to insurance." Farm Bureau's complaint does not simply "mention" the federal Fair Housing Act, but rather directly implicates Metro's power to act under the authority of the federal Fair Housing Act. This is not of such a limited nature as to be solely an anticipated defense.

Farm Bureau next argues that HUD cannot refer an investigation of redlining to Metro. Pursuant to 42 U.S.C. § 3610(f)(1), HUD must refer to local or state agencies the investigation of a complaint made under the federal Fair Housing Act if the claim is

within the jurisdiction of the agency and the agency has been certified.[5] Farm Bureau argues that Metro does not have jurisdiction under state law to investigate redlining and thus HUD cannot refer redlining claims to Metro under the federal Fair Housing Act. Farm Bureau makes this argument despite this court's holding that claims of redlining are covered by the federal Fair Housing Act and the fact that the federal statute and the local ordinance contain virtually identical language.[6]

Farm Bureau contends that the Indiana Civil Rights Act does not contain specific language authorizing Metro to investigate claims of redlining, and thus HUD cannot refer the investigation of such claims to Metro. Indeed, according to Farm Bureau, Metro has no power to investigate any claims that involve the insurance industry, which is separately regulated by Indiana law; Metro is purportedly limited to situations involving the *acquisition* of real property and housing. Presumably this would mean that Farm Bureau could refuse to issue insurance specifically because of the applicant's race, or because of the racial composition of the applicant's neighborhood, and Metro, in its efforts to eliminate discrimination, would have no power to investigate such complaints. Farm Bureau urges that it would be left to the insurance commissioner to investigate such claims, because Indiana insurance law prohibits unfair discrimination. *See* Ind.Code Ann. § 27–4–1–4(7) (Burns Supp.1993).

■ In applying § 3610(f), we must determine if Metro is authorized under state and local law to investigate complaints of insurance redlining. This court recently addressed, in *American Family*, similar arguments regarding the scope of the federal Fair Housing Act. As we have pointed out, the relevant provision of the Fort Wayne General Ordinance is virtually identical to that of the federal Fair Housing Act. This court's interpretation of the federal Fair Housing Act, while not binding on the Indiana Supreme Court in interpreting state and local laws, is to be given careful consideration and is persuasive authority. *See Indiana Civil Rights Comm'n v. Sutherland Lumber*, 182 Ind.App. 133, 394 N.E.2d 949, 954 (1979).

The Indiana Civil Rights Act contains broad policy statements but does not specify the jurisdiction, powers or responsibilities of the agencies created by municipalities to further the goals of the civil rights legislation. *See* Ind.Code Ann. §§ 22–9–1–12.1(b), 22–9–1–2. Neither party has presented any legislative history to assist us in determining whether or not the legislature intended for discriminatory insurance practices to be encompassed within the Act.

Turning to the language and overall purpose of the statute, we are convinced that Indiana's public policies of providing equal opportunity for the "acquisition through purchase or rental of real property," *see* Ind. Code Ann. § 22–9–1–2(a), and eliminating discrimination in housing, *see* Ind.Code Ann. § 22–9.5–5–1, are furthered by allowing the investigation of redlining by its local fair housing agencies.[7] Our reasons are much

---

5. Section 3610(f) provides:
 (1) Whenever a complaint alleges a discriminatory housing practice—
 (A) within the jurisdiction of a State or local public agency; and
 (B) as to which such agency has been certified by the Secretary under this subsection; the Secretary shall refer such complaint to that certified agency before taking any action with respect to such complaint.
 42 U.S.C. § 3610(f)(1).

6. Similarly, the Indiana Fair Housing Act, which became effective on July 1, 1991, and thus was not in effect at the time Kesterke filed his complaint, is almost identical in relevant part to the federal Fair Housing Act:
 (a) A person may not refuse to sell or to rent after the making of a bona fide offer, refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny a dwelling to any person because of race, color, religion, sex, familial status, disability, or national origin.
 (b) A person may not discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in providing services or facilities in connection with the sale or rental of a dwelling, because of race, color, religion, sex, familial status, disability, or national origin.
 Ind.Code Ann. § 22–9.5–5–1 (Burns Supp.1993).

7. Farm Bureau makes much of the fact that insurance is not specifically mentioned in Indiana Code § 22–9–1–2, concluding that the legislature could not have intended to include insurance. Farm Bureau points to Indiana Code § 22–9–1–2(c), which provides: "It is also the

the same as those set forth in *American Family, see* 978 F.2d at 297–301, and we need not belabor the issue by repeating them here. Suffice to say that one of the primary purposes of the Indiana legislature was the elimination of discrimination in the acquisition, and one must presume retention, of real property and housing, and a person's inability to obtain or retain insurance for racial reasons can swiftly defeat Indiana's goal of eliminating housing discrimination and segregation.[8] *See id.* at 297 ("No insurance, no loan; no loan, no house; lack of insurance thus makes housing unavailable."). We conclude that, pursuant to the Indiana Civil Rights Act, local agencies created to enforce the Act's fair housing provisions have jurisdiction to investigate claims of insurance redlining.

■ In the district court's final judgment of March 3, 1993, it granted Metro's cross-motion for summary judgment. The court held that Metro had jurisdiction under the local ordinance to investigate claims of redlining. HUD subsequently withdrew its assignment to Metro of Kesterke's complaint, conducted its own investigation, and in July of 1993 determined that reasonable cause did not exist to believe that a discriminatory housing practice had occurred. We presume that HUD withdrew the federal complaint either with the consent of Metro, *see* 42 U.S.C. § 3610(f)(2), or because Metro, in light of its agreement with Farm Bureau not to investigate pending the outcome of this case, could not pursue the investigation with reasonable promptness, *see id.* § 3610(f)(2)(B).

HUD's subsequent action does not moot the district court's initial determination of whether the federal court possessed subject matter jurisdiction. "It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed." *In re Carter,* 618 F.2d 1093, 1101 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *see Pullman Co. v. Jenkins,* 305 U.S. 534, 537–38, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939). Hence, HUD's withdrawal of Kesterke's complaint does not affect the district court's decision on subject matter jurisdiction, nor does it alter our analysis of whether Metro had jurisdiction under the local ordinance to investigate claims of insurance redlining.

■ We find that Farm Bureau's attempt to enjoin Metro's investigation under both the local ordinance and the federal Fair Housing Act states a claim that arises under the laws of the United States. We conclude that the Indiana Civil Rights Act and Fort Wayne General Ordinance G21–78 authorize Metro, under state law, to investigate com-

---

public policy of this state to protect employers, labor organizations, employment agencies, property owners, real estate brokers, builders, and lending institutions from unfounded charges of discrimination." Ind.Code Ann. § 22–9–1–2(c) (Burns Supp.1993). Farm Bureau insists that the absence of the word insurance is determinative. We disagree. There is no indication that the listed entities are the exclusive ones covered by the Indiana Civil Rights Act. Section 2(c) provides an additional public policy, not a replacement policy. Furthermore, we presume that Indiana did not desire to protect only those listed entities, and no others, from unfounded charges.

8. Farm Bureau contends that the distinction between homeowner and hazard insurance has been overlooked. Its position is that if a mortgage instrument requires only that the mortgagor have hazard insurance, then denial of or refusal to renew homeowner's insurance does not make housing unavailable. Hazard insurance protects against loss from fire, windstorms and other nat-

ural hazards. John P. Wiedemer, *Real Estate Finance* 336 (4th ed. 1983). According to Farm Bureau, homeowner's insurance includes additional protections, such as against theft or physical damage to improvements, and as a result hazard insurance is cheaper, has different underwriting guidelines, and often will be written on property where full homeowner's coverage may be denied. Because Farm Bureau declined to renew Kesterke's homeowner's insurance, rather than hazard insurance, it claims that it did not make housing unavailable to Kesterke.

We are not persuaded by Farm Bureau's argument. By refusing to issue a homeowner's insurance policy, the cost of owning a home or real property is increased, perhaps prohibitively. The property owner would be required to carry the risks and bear the costs for all injury, loss, or damage other than for the limited situations covered by hazard insurance. This undoubtedly could make owning and retaining real property unavailable; simply preventing foreclosure is not sufficient to make housing "available."

plaints of insurance redlining. Hence, pursuant to 42 U.S.C. § 3610(f), it was proper for HUD to refer the investigation of Kesterke's complaint to Metro as a certified agency.[9] Furthermore, in light of our conclusion that Indiana state law provides that Metro had authority to investigate insurance redlining, we reject Farm Bureau's argument that the district court misconstrued Indiana law and erroneously granted summary judgment in favor of Metro. The district court properly found federal question jurisdiction and declined to remand the case.[10]

## III. REDLINING UNDER THE FAIR HOUSING ACT

Farm Bureau asserts that the federal Fair Housing Act does not cover the claim of nonrenewal of a homeowner's policy made by a white homeowner living in a racially mixed neighborhood. We presume that, in light of our decision interpreting Indiana law consistently with Seventh Circuit law, Farm Bureau also makes this argument with respect to the scope of Indiana law. Farm Bureau's position is that *American Family* was wrongly decided and that the federal Fair Housing Act does not cover insurance redlining, citing *Mackey v. Nationwide Insurance Cos.*, 724 F.2d 419, 423–24 (4th Cir.1984); that even if *American Family* is correct, the federal Fair Housing Act should not cover claims of redlining made by white homeowners; and that a finding that the federal Fair Housing Act covers Kesterke's claim would impermissibly contravene the McCarran–Ferguson Act.

We decline Farm Bureau's invitation to revisit this court's thoroughly reasoned opinion in *American Family*. Farm Bureau has presented no arguments or facts that would persuade us to disturb the *American Family* decision.

We also reject Farm Bureau's contention that *American Family* does not include a claim of prohibited redlining simply because the claim is made by a white person. Implicit in this argument is the notion that white people are not harmed by discrimination or segregation, and thus could not have been intended beneficiaries of the federal Fair Housing Act; and that it is perfectly acceptable to create segregated neighborhoods provided that the means used are to move white people out by declining to renew their insurance. We find both propositions offensive and repugnant to the purpose and goals of the Fair Housing Act. The race of the person complaining of impermissible redlining is irrelevant. *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (white tenant of apartment complex has standing under the Fair Housing Act to challenge the racially discriminatory practices of his landlord); *see also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) (white residents have standing under the Fair Housing Act to challenge racial steering taking place in their neighborhood). The fact that Kesterke is white does not bar him from bringing a complaint of redlining

**9.** The district court found that HUD could make a permissive assignment pursuant to 42 U.S.C. § 3616. We need not pass on the issue of permissive assignment or Farm Bureau's arguments regarding it. Subsequent to the district court's finding of permissive referral, the parties stipulated that Metro received its assignment from HUD on the basis of a mandatory referral under 42 U.S.C. § 3610. We therefore limit our holding to the facts of this case finding jurisdiction of Metro under a mandatory referral.

**10.** Farm Bureau also contends that the district court erred in denying its petition for certification to the Indiana Supreme Court of the issue of whether Metro has jurisdiction under the Indiana Civil Rights Act to investigate a claim of redlining. The decision to grant or deny a motion to certify a question of state law is discre-

tionary with the district court. *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91, 94 S.Ct. 1741, 1743–44, 40 L.Ed.2d 215 (1974). A federal court should decline to certify a question if the court may properly decide the issue based upon materials before it. *See Woodbridge Place Apartments v. Washington Square Capital, Inc.*, 965 F.2d 1429, 1434 (7th Cir.1992).

The district court declined to certify the question of Metro's jurisdiction to the Indiana Supreme Court. The court reasoned that the question is not a particularly novel or difficult one, the state law is not the subject of conflicting state decisions, and there is sufficient federal interpretation of the federal Fair Housing Act to assist in interpreting similar state and local housing laws. We find no abuse of discretion by the district court in refusing to certify the question.

under Indiana state law or the federal Fair Housing Act.

 Farm Bureau also asserts that the McCarran–Ferguson Act precludes application of the federal Fair Housing Act to Kesterke's complaint of redlining. The McCarran–Ferguson Act provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance...." 15 U.S.C. § 1012(b) (1988). We find no Indiana law that would be invalidated, impaired or superseded as a result of the application of the federal Fair Housing Act. True, Indiana insurance law prohibits unfair discrimination. As this court has noted, however, duplication is not conflict. *See American Family*, 978 F.2d at 295, 297. Furthermore, Indiana does not require or condone redlining, or commit to insurers all decisions about redlining, and thus Indiana law does not preempt the Fair Housing Act. *See id.* at 297.

The federal Fair Housing Act applies to the discriminatory denial of insurance as well as the discriminatory refusal to renew insurance that effectively precludes ownership of housing on the basis of race, regardless of the race of the applicant. Furthermore, because there is no conflict between Indiana insurance law and the federal Fair Housing Act with regard to the issue of redlining, the McCarran–Ferguson Act does not preclude application of the federal Fair Housing Act to Kesterke's claim of redlining.

### CONCLUSION

The district court properly exercised federal question jurisdiction over Farm Bureau's attempt to enjoin Metro's investigation of complaints of insurance redlining that were dual filed pursuant to the federal Fair Housing Act and Fort Wayne General Ordinance G21–78. The district court had jurisdiction at the time the complaint was filed, and subsequent actions by HUD do not deprive the court of subject matter jurisdiction. We further conclude that Metro had power under Indiana state law to conduct an investigation of redlining.

In light of HUD's withdrawal and subsequent dismissal of Kesterke's complaint, however, Farm Bureau's appeal seeking to overturn the district court's denial of injunctive relief is now partly mooted. To the extent that Farm Bureau sought to enjoin Metro from investigating Kesterke's redlining complaint under the federal Fair Housing Act, there no longer exists any action for Farm Bureau to attempt to enjoin. Although the only issue now properly on appeal relating to Farm Bureau's prayer for injunctive relief is a state law issue, that issue was decided at a time when the district court had jurisdiction over the state law question and thus is unaffected by HUD's subsequent withdrawal.

The grant of summary judgment to Metro is hereby modified. This case is remanded for dismissal of the part of the case seeking injunctive relief against Metro based on the assignment by HUD to Metro to investigate Kesterke's federal Fair Housing Act complaint. The judgment of the district court, including the finding that Metro has authority under state law to investigate claims of insurance redlining, is otherwise affirmed.