**Penny NEVELS, et al., Plaintiffs,**

v.

**WESTERN WORLD INSURANCE COMPANY, INC., Defendant.**

**No. C04–1024Z.**

United States District Court, W.D. Washington, at Seattle.

Dec. 10, 2004.

Carlie A Ware, John P. Relman, Reed N. Colfax, Shilpa S. Satoskar, Kelli M. Evans, Relman & Associates, Washington, DC, Jesse Andrew Wing, MacDonald, Hoague & Bayless, Seattle, WA, for Penny Nevels Individually and as Representatives of a Class of All Others Similarly situated, Karla Carano Individually and as a Representative of a Class of All Others Similarly Situated, Maria J Fritz Individually and as Representative of a Class of All Others Similarly Situated, Fair Housing Center of South Puget Sound, Fair Housing Council of Oregon, Steven H Abrams, Becky Marie Abrams, Plaintiffs.

Christopher Hanback, Rafe Petersen, Holland & Knight (DC), Washington, DC, Medora A Marisseau, Bullivant Houser Bailey, Seattle, WA, for Western World Insurance Company Inc, Defendant.

Jeffrey Lowell Needle, Seattle, WA, for Smith, Paul National Fair Housing Alliance and National Alliance for the Mentally Ill Counsel for Amici National Fair Housing Alliance and National Alliance for the Mentally Ill, Jeffrey Needle National Fair Housing Alliance and National Alliance for the Mentally Ill Counsel for Amici National Fair Housing Alliance and National Alliance for the Mentally Ill, Amicus.

## ORDER

ZILLY, District Judge.

*BACKGROUND*

### I. Introduction

This matter comes before the Court on Defendant's Motion to Dismiss, docket no. 23. The instant case involves a class action lawsuit brought by adult family home operators against Western World Insurance Company ("Defendant") alleging violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"). In particular, Plaintiffs allege that Defendant discriminated against Plaintiffs by refusing to renew property and/or liability insurance coverage for adult family homes because adults with mental illnesses reside, or are eligible to reside, in the homes. 1st Amend. Compl. docket no. 19, ¶ 3. Plaintiffs' factual

allegations are not disputed. D. Reply Br., docket no. 34, p. 3.

Adult family homes[1] are single-family residential homes for elderly adults and adults with disabilities that provide personal and/or medical care in a family-like setting. 1st Amend. Compl., docket no. 19, ¶ 21. Adult family homes provide an alternative to institutional care by allowing people with disabilities to live in conventional residential neighborhoods. *Id.* at ¶ 22. Care-givers render a range of services, including meals, assistance with dressing, assistance with medication, and social and recreational activities. *Id.* at ¶ 23. Adult family homes typically house between two and six residents, *id.*, and they have provided service to hundreds of thousands of persons who would otherwise find themselves institutionalized. Amicus Br., docket no. 26, p. 6. Until July 20, 2003, the State of Washington required adult family homes to carry liability insurance. 1st Amend. Compl., docket no. 19, ¶ 13.

## II. Plaintiffs

### A. Fair Housing Center of South Puget Sound & Fair Housing Council of Oregon

In 2002, Plaintiff Fair Housing Center of South Puget Sound[2] ("FHCSPS") began receiving calls from owners and operators of adult family homes complaining that Defendant had cancelled or refused to renew insurance policies covering their homes because they provided housing for residents with mental illnesses or were licensed to provide housing for people with mental illnesses. *Id.* at ¶¶ 25–26. FHCSPS commenced an investigation of Defendant's allegedly discriminatory practices and allege that Defendant had cancelled and/or refused to renew property and/or liability insurance policies for approximately 150 adult family homes in Washington. *Id.* at ¶ 28. Plaintiff Fair Housing Council of Oregon[3] ("FHCO") also received calls from adult family home operators in Oregon who complained that Defendant cancelled and/or declined to renew insurance policies because the adult family homes provided housing for individuals with mental illnesses. *Id.* at ¶ 30.

### B. Penny Nevels

Plaintiff Penny Nevels is the co-owner and operator of an adult family home in Seattle, Washington. *Id.* at ¶ 32. Nevels is licensed by the State of Washington to provide housing and care for three residents with mental illnesses and dementia. *Id.* at 33. Effective January 10, 2001, Nevels was covered by a liability insurance policy from Defendant. *Id.* at 38. In November, 2002, less than two months before the renewal date on her policy, Nevels received a written "Notice of Cancellation or Nonrenewal," which stated:

CONDITIONAL NON–RENEWAL—WESTERN WORLD INSURANCE COMPANY NO LONGER WRITES ADULT FAMILY HOMES LICENCED WITH THE MENTAL ILLNESS DESIGNATION... TO CON-

---

1. The Revised Code of Washington defines "adult family home" as "a residential home in which a person or persons provide personal care, special care, room, and board to more than one but not more than six adults who are not related by blood or marriage to the person or persons providing the services." RCW 70.128.010(1).

2. FHCSPS is a private non-profit organization which seeks to "identify and eliminate discriminatory housing practices and to ensure the equal availability of housing and related services to all people, without regard to race, religion, gender, national origin, familial status, or disability." 1st Amend. Compl., docket no. 19, ¶ 13.

3. FHCO is a fair housing non-profit organization. 1st Amend. Compl., docket no. 19, ¶ 14.

SIDER FOR RENEWAL COVERAGE, WE WILL NEED A REVISED COPY OF YOUR ADULT FAMILY HOME LICENSE WITHOUT THE MENTAL ILLNESS DESIGNATION.

Notice of Cancellation, docket no. 19, Ex. D (emphasis in original).

In order to renew her policy, Nevels would have been required to evict her mentally ill resident and bar individuals with mental illnesses from residing in her home. Additionally, Nevels needed to continue her liability insurance coverage as a condition of her adult family home license.[4] 1st Amend. Compl., docket no. 19, ¶ 43. Nevels refused to remove the mental illness designation from her license, and Defendant declined to renew her liability insurance policy on January 10, 2003. *Id.* at ¶¶ 39, 44. Although Nevels obtained liability insurance at a much higher premium through another company, she failed to renew the new policy in January 2004 because the increased premium payments constituted a significant financial hardship. *Id.* at ¶¶ 46–47. Nevels is unable to find affordable liability insurance, and she is currently uninsured. *Id.* at ¶ 48.

### C. Karla Caraño

Plaintiff Karla Caraño owns and operates an adult family home in Snohomish, Washington. *Id.* at ¶ 51. Caraño is licensed to care for individuals with mental illnesses. *Id.* at ¶ 52. In December 2001, Caraño obtained property and liability insurance from Defendant. *Id.* at ¶ 59. In November 2002, Caraño received a written "Notice of Cancellation and Nonrenewal" from Defendant, which stated:

WESTERN WORLD INSURANCE COMPANY DOE [*sic*] NOT ACCEPT ADULT FAMILY HOMES LICENCED FOR OR CARING FOR MENTAL ILLNESS RESIDENTS... A PHYSICAL INSPECTION OF THIS HOME INDICATES A RESIDENT DIAGNOSED [*sic*] AS SCHIZOPHRENIA [*sic*]. THIS RISK NO LONGER QUALIFIES FOR COVERAGE WITH THIS COMPANY.

Notice of Cancellation, docket no. 19, Ex. A (emphasis in original).

Caraño refused to remove the mental illness designation from her license, and Defendant refused to renew her property and liability insurance in December 2002. 1st Amend. Compl., docket no. 19, ¶¶ 59, 64. At the time of cancellation, Washington State required adult family homes to be covered by liability insurance. Caraño obtained replacement insurance at a much higher cost. *Id.* at ¶ 66. In April 2004, Caraño cancelled her new liability policy because the premiums constituted a significant financial hardship. *Id.* at ¶ 67. Caraño is unable to find affordable liability insurance, and she is currently uninsured. *Id.* at ¶ 68.

### D. Maria J. Fritz

Plaintiff Maria J. Fritz owns and operates an adult family home in Kent, Washington. *Id.* at ¶ 71. Fritz is licensed by the State of Washington to care for adults with mental illnesses, dementia, and developmental disabilities. *Id.* at ¶ 72. In January 2002, Fritz obtained a liability insurance policy from Defendant. *Id.* at ¶ 76. In December 2002, Fritz received a call from her state licensor, who informed her that Defendant would not be renewing her insurance coverage because her license contained designations that allowed her to provide housing and care for people with mental illnesses. *Id.* at ¶ 78. Two weeks later, Fritz received a written "Notice of

---

4. Prior to July 23, 2003, Washington State required operators of adult family homes to carry liability insurance; they are no longer required to do so. *See* RCW 70.128.120; WAC 388–76–59050; 1st Amend. Compl. at ¶ 67.

Cancellation or Nonrenewal," which stated:

CONDITIONAL NON–RENEWAL— WESTERN WORLD INSURANCE COMPANY NO LONGER WRITES ADULT FAMILY HOMES LICENCED WITH THE MENTAL ILLNESS DESIGNATION... TO CONSIDER FOR RENEWAL COVERAGE, WE WILL NEED A REVISED COPY OF YOUR ADULT FAMILY HOME LICENSE WITHOUT THE MENTAL ILLNESS DESIGNATION.

Notice of Cancellation, docket no. 19, Ex. E (emphasis in original).

Fritz did not want to evict her mentally ill residents, nor did she wish to bar mentally ill people from residing in her home in the future. 1st Amend. Compl., docket no. 19, ¶ 83. Fritz refused to remove the mental illness designation from her license, so Defendant refused to renew her liability policy in January 2003. *Id.* at ¶¶ 80, 84. Fritz obtained liability insurance at approximately five times the cost of her Western World policy. *Id.* at ¶ 86. Fritz cancelled the new policy in September 2003 because the cost was prohibitive. *Id.* at ¶ 87. Fritz is currently without liability insurance. *Id.* at 88.

### E. Becky and Steve Abrams

Plaintiffs Becky Marie Abrams and Steven Abrams owned and operated an adult family home in Redmond, Washington. *Id.* at 91. Mr. and Mrs. Abrams were licensed by the State of Washington to care for individuals with mental illnesses and dementia. *Id.* at ¶ 92. Beginning in May 2002, Defendant provided Mr. and Mrs. Abrams with property and liability insurance. *Id.* at ¶ 98. In March 2003, Mr. and Mrs. Abrams received a written "Notice[s] of Cancellation or Nonrenewal," which stated:

WESTERN WORLD INSURANCE COMPANY DOES NOT WRITE ADULT FAMILY HOMES WITH MENTAL ILLNESS DESIGNATION ON THEIR DSHS ADULT FAMILY HOME LICENSE OR HOMES WHO CARE FOR MENTAL ILLNESS RESIDENTS.

Notice of Cancellation, docket no. 19, Ex. F (emphasis in original).

Mr. and Mrs. Abrams contacted their insurance agent, who informed them that Defendant would not renew their insurance unless they removed the mental illness designation from their license. 1st Amend. Compl., docket no. 19, ¶ 103. In order to keep their license and protect themselves against liability, Mr. and Mrs. Abrams removed the mental illness designation from their license, and Defendant renewed their policy. *Id.* at ¶¶ 104–05. As a result, on at least two occasions, Mr. and Mrs. Abrams were forced to turn away individuals with mental illnesses. *Id.* at ¶ 107. Mr. and Mrs. Abrams experienced difficulty in finding individuals without mental illness to fill vacant beds in their facility, and they sold their facility in December 2003. *Id.* at ¶¶ 108–09.

### III. Defendant

Defendant Western World Insurance is a New Hampshire corporation directly and indirectly selling commercial malpractice liability insurance in Washington as a "surplus lines" insurer. Surplus lines regulations authorize companies to offer insurance when coverage is not available from other licensed insurance companies. *See* RCW § 48.15.040. When specially licensed surplus lines brokers are unable, after diligent effort, to obtain insurance coverage from licensed carriers, they may obtain coverage from surplus lines brokers. *Id.* "Hence, Surplus Lines carriers such as Western World are the insurer of last resort." D. Amend. Mot. to Dismiss, docket no. 23, p. 1.

## IV. Plaintiffs' Claims

On August 16, 2004, Plaintiffs filed this class action lawsuit alleging that Defendant's cancellation of Plaintiffs' insurance policies violated the FHA. Plaintiffs allege that Defendant made housing unavailable, discriminated in the provision of services connected with housing, and failed to make reasonable accommodations in its policies and practices that were necessary to afford handicapped individuals equal opportunity to use and enjoy housing in violation of 42 U.S.C. §§ 3604(f)(1)-(3). Plaintiffs next allege that Defendant discriminated on the basis of handicapped status in the terms or conditions of residential real estate-related transactions in violation of 42 U.S.C. § 3605. Plaintiffs finally allege that Defendant interfered with Plaintiffs on account of their having aided or encouraged people with mental illnesses in the exercise or enjoyment of rights granted or protected under the FHA in violation of 42 U.S.C. § 3617.

## DISCUSSION

### I. Legal Standard

When considering a motion under Rule 12(b)(6), this Court construes the complaint in the light most favorable to the non-moving party. *Wyler Summit P'ship v. Turner Broad. System, Inc.*, 135 F.3d 658, 661 (9th Cir.1998). The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Id.* A complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations and citations omitted).

### II. Should Plaintiffs' Complaint be Dismissed for Failure to State a Claim?

#### A. Plaintiffs' § 3604(f)(1) Claim

 Plaintiffs allege that Defendant's actions constitute unlawful discrimination in violation of 42 U.S.C. § 3604(f)(1). Section 3604(f)(1) makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable, a dwelling [5] because of a handicap of (A) that buyer or renter, (B) a person residing in that dwelling...; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1).

██ Department of Housing and Urban Development ("HUD") regulations elaborate upon the types of activities prohibited by § 3604. *See* 24 C.F.R. § 100.50. "It shall be unlawful, because of ... handicap ... to restrict or attempt to restrict the choices of persons by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to perpetuate, or tend to perpetuate, segregation in housing patterns, or to discourage or obstruct choices in a community, neighbor-

---

**5.** Plaintiffs' adult family homes are "dwellings" for the purposes of the FHA, and Defendant's argument that the adult family homes are commercial establishments analogous to hospitals is disingenuous. The FHA defines "dwelling" as "any building, structure, or portion thereof which is occupied as, or designated or intended for occupancy as a residence." 42 U.S.C. § 3602(b). Plaintiffs' adult family homes are residential long-term care facilities that provide individualized and personal care. *See* 1st Amend. Compl., docket no. 19, ¶¶ 21-24; Amicus Br., docket no. 26, pp. 6-9. Courts have found that similar facilities constitute "dwellings" for the purposes of the FHA. *See City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) (group home for recovering addicts); *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775 (7th Cir.2002) (group home for individuals impaired by brain trauma); *Children's Alliance v. City of Bellevue*, 950 F.Supp. 1491 (W.D.Wash.1997) (group facility for abused and abandoned children).

hood or development." 24 C.F.R. § 100.70(a). Prohibited conduct includes "[r]efusing to provide ... property or hazard insurance for dwellings or providing such ... insurance differently because of ... handicap." 40 C.F.R. § 100.70(d)(4). As the Seventh Circuit explained, "No insurance, no loan; no loan, no house; lack of insurance thus makes housing unavailable." *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 297 (7th Cir.1992). Thus, the plain language of HUD regulations makes it clear that § 3604 applies to discrimination in providing property or hazard insurance.

Defendant does not deny that Plaintiffs' insurance policies were cancelled because Plaintiffs cared for individuals with mental disabilities.[6] Instead, Defendant argues that the alleged discriminatory conduct does not fall within the purview of the FHA because Defendant provided Plaintiffs with commercial malpractice liability insurance, and Defendant distinguishes commercial malpractice liability insurance from property and hazard insurance covered under the FHA. However, Defendant's characterization of the type of insurance it provided to Plaintiffs is overly broad. Plaintiffs allege Defendant provided Caraño and Abrams with both property and liability insurance. 1st Amend. Compl., docket no. 19, ¶¶ 59, 98. Defendant's notices state that the decision to cancel or not renew Plaintiffs' insurance was based upon the presence of residents with mental illnesses. Notices of Cancellation, docket no. 19, Exs. A, D–F. Accepting all well-pleaded facts as true, *Wyler*, 135 F.3d at 661, Plaintiffs' have stated a claim under § 3604(f)(1) as to the class members who experienced a cancellation of their property insurance.

■ However, the analysis becomes more complicated with respect to the Plaintiffs who alleged only a cancellation of liability insurance. Plaintiffs Nevels and Fritz allege that they obtained only liability insurance from Defendant, and that such insurance was cancelled. 1st Amend. Compl., docket no. 19, ¶¶ 38, 44, 76, 84. Plaintiffs Nevel and Fritz allege that they were able to obtain replacement liability insurance, albeit at a higher cost, from other insurance providers. *Id.* at ¶¶ 46, 86. Due to significantly higher costs, however, Plaintiffs Nevels and Fritz cancelled their new liability policies. *Id.* at ¶¶ 48, 88. Although adult family homes in Washington State were required to carry liability insurance, they are no longer required to do so. *See* RCW 70.128.120; WAC 388–76–59050; 1st Amend. Compl. at ¶ 67. Plaintiffs Nevels and Fritz do not allege that disabled individuals were turned away from their facilities.

Defendant argues that the non-renewal of professional malpractice liability insurance is not related to a "dwelling" because liability insurance does not cover common risks to buildings where clients are cared for. Instead, liability insurance covers Plaintiffs' businesses and their employees in the event that they take or fail to take an action that injures a client or allow a client to injure others or themselves. Defendant contends that the "property insurance" that "lenders require borrowers to secure," in order to obtain a loan, *American Family*, 978 F.2d at 297, is different than liability insurance that protects a business against the negligence of owners or employees.

Plaintiffs and *amici* counter that there is extensive overlap between the type of liability insurance provided by Defendant

---

**6.** Defendant suggests that its actions are justified because adult family homes serving persons with mental illnesses pose a higher risk,

but Defendant provides no actuarial data to support its position. D. Amend. Mot. to Dismiss, docket no. 23, pp. 4–5.

and homeowner's property insurance. Plaintiffs note that the statutory definition of liability insurance (i.e. general casualty insurance) pointed to by Defendant covers both personal injury and a broad array of property injury. *See* RCW § 48.11.070. Thus, Plaintiffs argue that the liability insurance in this case performs many of the same functions as does homeowner's insurance.

■ The "broad and inclusive" language of the FHA must be given "generous construction" in order to carry out a "policy that Congress considered to be of the highest priority." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211–12, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). Neither party has cited to any cases deciding whether liability insurance provided to adult family homes falls within the purview of the FHA.

As noted above, the cancellation of liability insurance policies held by Plaintiffs Nevels and Fritz did not literally "make housing unavailable" because Nevels and Fritz continued to care for disabled individuals. Nor does the plain language of the FHA prohibit the discriminatory non-renewal of liability insurance, but Plaintiffs argue that the cancellation of liability insurance threatens the financial viability of Plaintiffs' homes. In support of this argument, Plaintiffs rely on *Wai v. Allstate Ins. Co.*, 75 F.Supp.2d 1 (D.D.C.1999). In *Wai*, a property owner rented residential property to an organization that provided housing for handicapped individuals. *Id.* at 2–3. The property owner contacted her insurance provider and requested that her homeowner's policy be changed to a landlord's policy that provided casualty and liability insurance. *Id.* at 3. The court noted that this was "standard property insurance." *Id.* at 6. The insurance provider cancelled the plaintiff's existing homeowner's policy and declined to provide a landlord policy on the grounds that

the tenants would be handicapped. *Id.* at 3. On review of the defendant's motion to dismiss, the court found that the plaintiff sufficiently plead a violation of § 3604(f)(1). *Id.* at 7. The court reasoned that "[i]f, in order to rent to disabled persons, a landlord must risk losing her home through loss of mortgage financing, loss of catastrophe insurance, and loss of liability insurance, she will be disinclined to rent to disabled persons... Such a requirement would directly contravene the purposes of the FHA." *Id.* at 6.

Although the insurance at issue in *Wai* was a form of property insurance, the court's reasoning holds true in the instant matter. By cancelling Plaintiffs' liability insurance, Defendant created a powerful disincentive to provide care for disabled individuals. Plaintiffs Nevels and Fritz, now without liability insurance, face significant financial risk, and their ability to provide housing for disabled individuals is threatened. Defendant counters that the nexus between cancelling liability insurance and making housing unavailable is too attenuated to support FHA liability because liability insurance is not related directly to Plaintiffs' ownership of their houses. However, Plaintiffs Nevels and Fritz now bear the risks and costs for all injury, loss, or damage other than that provided for by property or hazard insurance. "This undoubtedly could make owning and retaining real property unavailable; simply preventing foreclosure is not sufficient to make housing 'unavailable.'" *United Farm Bureau Mutual Ins. Co., Inc. v. Metropolitan Human Relations Comm'n*, 24 F.3d 1008, 1014 n. 8 (7th Cir.1994). Furthermore, Defendant's notices of non-renewal do not distinguish between property and liability insurance. Instead, Defendant's notices of non-renewal state that "Western World no longer writes adult family homes licensed with the mental illness designation," and it is

undisputed that the non-renewal of the insurance policies was solely based on the presence of disabled individuals in Plaintiffs' homes. 1st Amend. Compl., docket no. ¶¶ 19, 41 (original all caps). Thus, this Court gives § 3604(f)(1) a broad and generous construction and finds that Plaintiffs' sufficiently stated a violation of § 3604(f)(1). *Trafficante,* 409 U.S. at 211–12, 93 S.Ct. 364.[7]

### B. Plaintiffs' § 3604(f)(2) Claim

Plaintiffs next argue that Defendant's cancellation of insurance constituted discrimination in the provision of services related to a dwelling. Section 3604(f)(2) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a handicap of(A) that person; or (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (C) any person associated with that person." 42 U.S.C. § 3604(f)(2).

Property insurance is without question a service provided in connection with a dwelling. *See* 24 C.F.R. § 100.70(d)(4) (prohibited activities include "[r]efusing to provide ... property or hazard insurance"). Thus, Plaintiffs sufficiently stated a claim with respect to those Plaintiffs who had property insurance. Again, the controversy surrounds those Plaintiffs who only obtained liability insurance from Defendant. Defendants argue that liability insurance is not a service in connection with a dwelling because liability insurance covers the conduct of owners and employees rather than the dwelling itself. As illustrated above, however, liability insurance covers a broad range of property damage. *See* RCW § 48.11.070. Without liability insurance, Plaintiffs, who provide *residential* services, are faced with the option of denying care for disabled individuals. Giving the FHA a broad and generous construction, *Trafficante,* 409 U.S. at 211–212, 93 S.Ct. 364, the Court concludes that the liability insurance provided by Defendant to Plaintiffs constitutes a service in connection with a dwelling. Accordingly, the Court finds that Plaintiffs adequately stated a § 3604(f)(2) violation.

### C. Plaintiffs' § 3604(f)(3) Claim

Plaintiffs next claim that Defendant violated § 3604(f)(3)(B), which makes it unlawful to "[refuse] to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

In particular, Plaintiffs allege that Defendant implemented a discriminatory policy and practice of denying insurance coverage to adult family homes that care for mentally disabled individuals. *See* 1st Amend. Compl., docket no. 19, ¶¶ 110–17. Defendant does not challenge Plaintiffs' allegations of discriminatory conduct. Instead, Defendant only argues that § 3604(f) does not apply to liability insurance and that liability insurance is not a service related to a dwelling. As discussed above, the Court gives the FHA a broad and generous construction and finds that

---

7. Defendant's reliance on the absence of the term "liability" insurance in the HUD regulations is similarly unavailing. Defendant argues that 24 C.F.R. § 100.70(d)(4), which lists "property" and "hazard" insurance as two examples of services that fall within the scope of Section 3604, "applies solely to home-owner's property and hazard insurance." D. Amend. Mot. to Dismiss, docket no. 23, p. 14. But HUD's regulation explicitly states that prohibited activities "include, but are not limited to" those listed therein. 24 C.F.R. § 100.70.

Plaintiffs adequately stated a § 3604(f)(3) claim.

This Court DENIES Defendant's motion to dismiss Plaintiffs' §§ 3604(f)(1)-(3) claims.

### D. Plaintiffs' § 3605 Claim

Plaintiffs' next claim that Defendant's non-renewal of Plaintiffs' insurance policies violated § 3605. Section 3605 makes it "unlawful for any person … whose business includes engaging in residential real estate-related transactions to discriminate … in making available such a transaction, or in the terms or conditions of such a transaction, because of … handicap." 42 U.S.C. § 3605(a). The term "residential real estate-related transaction" is defined as (1) "making or purchasing of loans or providing other financial assistance … for purchasing, constructing, improving, repairing, or maintaining a dwelling … or [financial assistance] secured by residential real estate." 42 U.S.C. § 3605(b).

Defendant argues that Plaintiffs' § 3605 claim should be dismissed because Defendant is not engaged in the business of residential real estate transactions or otherwise providing financial assistance for residential real estate transactions. Courts have generally agreed that § 3605 does not contemplate causes of action against insurers who do not directly provide loans or other financial assistance related to a dwelling. In *American Family*, plaintiffs brought an action against an insurer to challenge racial discrimination in which the insurer declined to write property insurance for people who lived in predominately minority neighborhoods. The court held that there was no cause of action for insurance discrimination under § 3605 because "[i]t would strain language past the breaking point to treat property or casualty insurance as 'financial assistance'—let alone as assistance 'for purchasing … a dwelling' … Payment runs from the customer to the insurer." 978 F.2d at 297. In *Dunn v. Midwestern Indemnity Mid–American Fire and Casualty Co.*, 472 F.Supp. 1106, 1110 (S.D.Oh. 1979), the court likewise ruled that § 3605 "does not contemplate proscription of insurance [discrimination] by an insurance company not engaged in the making of commercial real estate loans."

However, at least one recent decision indicates that courts are willing to read § 3605 as providing a cause of action against insurers. In *National Fair Housing Alliance, Inc. v. Prudential Ins. Co. of Am.*, 208 F.Supp.2d 46 (D.D.C.2002), fair housing organizations brought an FHA disparate impact claim against an insurance company. The court ruled that "other financial assistance" should be interpreted broadly to include homeowners' insurance because "[t]he application of the FHA to homeowners insurance is fully consistent with the statute's purpose in eliminating discrimination resulting in segregated housing." *Id.* at 57. Thus, the plaintiffs adequately stated a § 3605 claim. *Id.* at 57–58. The court reasoned that "insurance provides financial assistance necessary to maintain a dwelling" because individuals cannot maintain financing without insurance, and individuals cannot repair their homes when disaster strikes without insurance. *Id.* at 58.

 Defendant attempts to distinguish *National Fair Housing Alliance* by again drawing a distinction between the homeowners insurance at issue in that case and the liability insurance in the present matter. At least two Plaintiffs in the present matter allege that Defendant provided property insurance. Following the *National Fair Housing Alliance* court's analysis, the non-renewal of property insurance is actionable under § 3605 because it is financial assistance necessary to maintain a dwelling. Two other Plaintiffs al-

lege that Defendant provided them with liability insurance. As noted above, liability insurance covers damage to buildings and structures in addition to personal injuries. Without such insurance, Plaintiffs face potentially grave financial liabilities. Giving the terms of the FHA a broad and generous construction, it is reasonable to conclude that the liability insurance at issue here is "financial assistance" for the purposes of § 3605 because such insurance is essentially necessary for the safe maintenance of Plaintiffs' adult group homes. Without such insurance, Plaintiffs cannot ensure that non-segregated, community-based housing for people with mental disabilities will remain available. Accordingly, this Court DENIES Defendant's motion to dismiss Plaintiffs' § 3605 claim.

### E. Plaintiffs' § 3617 Claim

Finally, Plaintiffs allege that Defendant violated § 3617 by interfering with Plaintiffs on account of their having aided or encouraged people with mental illnesses in the exercise or enjoyment of rights granted or protected by the FHA. Section 3617 makes it unlawful to "intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted by [the FHA]." The Ninth Circuit has "broadly applied [§ 3617] to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir.2001) (internal citations and quotation marks omitted).

Defendant argues that Plaintiffs' § 3617 claim should be dismissed because Plaintiffs failed to state either a § 3604 or § 3605 claim. In support of its argument that violations of § 3604 and/or § 3605 are prerequisites for a § 3617 claim, Defendant cites to *Metropolitan Housing Devel-*

*opment Corp. v. Village of Arlington Heights*, 558 F.2d 1283 (7th Cir.1977). Defendant's reliance is misplaced because the *Metropolitan Housing* court declined to decide the proposition Defendant cites the case for. *Id.* at 1288 n. 5 ("We decline to decide whether section 3617 can ever be violated by conduct that does not violate [sections 3604 or 3605]."). Furthermore, Defendant ignores Ninth Circuit authority to the contrary. In *Smith v. Stechel*, 510 F.2d 1162, 1164 (9th Cir.1975), the court held that a claim under §§ 3604 or 3605 is not a prerequisite for a claim under § 3617 because § 3617 "does not necessarily deal with a discriminatory housing practice." The Ninth Circuit has also allowed actions under § 3617 where there was no action under § 3604. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063 (9th Cir. 2004).

Defendant also argues that Plaintiffs' § 3617 claim should be dismissed because Plaintiffs do not provide direct evidence of direct interference with a protected person's right to fair housing. However, " § 3617 does not require a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability." *Walker*, 272 F.3d at 1128. Instead, "interference ... has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." *Id.* at 1129 (internal quotation marks omitted). Here, Plaintiffs allege that Defendant interfered with their ability to provide housing for mentally disabled individuals when Defendant threatened to cancel their insurance policies. The FHA provides Plaintiffs' and their tenants with a right to be free from housing discrimination based on disability. *See* § 3604. Defendant cannot sidestep liability under § 3617 by re-characterizing their actions as simply cancelling or not renew-

ing commercial insurance. The nexus between Defendant's threats and an impact on housing satisfies § 3617, and Defendant's motion to dismiss Plaintiffs' § 3617 claim is DENIED.

## III. Does the McCarran–Ferguson Act Preempt Interference with Washington State's Regulation of Surplus Lines Transactions?

██ Defendant next argues that the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq., ("MFA") preempts this action because it interferes with Washington State's regulation of surplus lines transactions. The MFA provides, in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless the Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). In Humana Inc. v. Forsyth, the Supreme Court identified three MFA preemption threshold requirements: (1) the federal law in question must not be specifically directed at the business of insurance; (2) there must exist a particular state law (or declared regulatory policy) enacted for the purpose of regulating insurance; and (3) application of the federal law to the controversy in question must invalidate, impair, or supersede that state law. 525 U.S. 299, 307, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999).

Application of the FHA to the present controversy will not invalidate, impair, or supersede Washington State's regulation of the insurance industry. Without any factual support, Defendant suggests that applying the FHA to surplus lines insurers would "wreak havoc on the states' regulatory scheme, restrict the availability of insurance coverage, and put the courts in the improper role of making complex decisions on insurance rates and coverage." D. Amend. Mot. to Dismiss, docket no. 23, p. 21. Defendant also suggests that apply-

ing the FHA to surplus lines insurers would impair Washington State's prohibition on discrimination in insurance transactions. However, the application of the FHA will advance Washington State's interest, rather than impairing it. See Dehoyos v. Allstate Corp., 345 F.3d 290, 295 (5th Cir.2003) ("Every circuit that has considered the question has determined that federal anti-discrimination laws may be applied in an insurance context, even where the state insurance agencies have mechanisms in place to regulate discriminatory practices."). Accordingly, Defendant's motion to dismiss because of MFA preemption is DENIED.

## CONCLUSION

For the reasons stated in this order, the Defendant's motion to dismiss, docket no. 23, is DENIED.

IT IS SO ORDERED.